UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 09-00389 |
| | ) | Chapter 11 |
| DAUFUSKIE ISLAND PROPERTIES, | ) | |
| LLC aka DAUFUSKIE ISLAND | ) | |
| RESORT & SPA, | ) | 145 King Street |
| | ) | Charleston, South Carolina 29401 |
| | ) | |
| Debtor. | ) | March 11, 2009 |
| | ) | 6:45 P.M. |

TRANSCRIPT OF THE COURT'S RULING IN THE MATTERS **(1)** CONTINUED
FINAL HEARING ON MOTION TO USE CASH COLLATERAL (MOTION AND
MEMORANDUM FOR APPROVAL OF INTERIM AGREED ORDER (I) AUTHORIZING
DEBTOR'S USE OF CASH COLLATERAL AND (II) PROVIDING ADEQUATE
PROTECTION AND GRANTING LIENS, SECURITY INTERESTS AND OTHER
RELIEF TO AFG, LLC}(DOC. 14). **(2)** EXPEDITED MOTION TO REJECT
TRANSFER AGREEMENT OF 1996 (DOC. 74). **(3)** EXPEDITED MOTION TO
INCUR DEBT AND FOR APPROVAL OF POST PETITION DEBTOR IN
POSSESSION FINANCING AND ASSOCIATED RELIEF (DOC. 79).
BEFORE HONORABLE JOHN E. WAITES
UNITED STATES CHIEF BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Ivan N. Nossokoff, LLC |
| | By:  IVAN N. Nossokoff |
| | 1470 Tobias Gadson Boulevard |
| | Suite 107 |
| | Charleston, South Carolina 29407 |
| | |
| ECR Operator: | Regina Schmidt |
| | |
| Transcription Service: | TRANSCRIPTS PLUS, INC. |
| | 435 Riverview Circle |
| | New Hope, Pennsylvania 18938 |
| | Telephone:  215-862-1115 |
| | Facsimile: 215-862-6639 |
| | e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

```
APPEARANCES:
(Continued)

For the Debtor:            Parker Poe Adams & Bernstein, LLP
                           By:  ELLIS R. LESEMANN, ESQ.
                           200 Meeting Street, Suite 301
                           Charleston, South Carolina 29401

For Imperial AI            Barton Law Firm
Credit Companies, Inc.:    By:  BARBARA GEORGE BARTON, ESQ.
                           P.O. Box 12046
                           Columbia, South Carolina 29211-2046

For Beach First           Mullins Riley & Scarborough LLP
National Bank:             By:  LINDA K. BARR, ESQ.
                           Post Office Box 11070
                           Columbia, South Carolina 29211

For the U.S. Trustee:      United States Department of Justice
                           Office of the United States Trustee
                           By:  JOSEPH F. BUZHARDT, III, ESQ.
                           1835 Assembly Street, Suite 953
                           Columbia, South Carolina 29201

For Textron Financial      Cooper & Moore, PA
Corporation:               By:  JAMES D. COOPER, JR., ESQ.
                           P.O. Box 11869
                           Columbia, South Carolina 29211-1869

For Petrus Private         Leath, Bouch, Crawford & von Keller
Investments, LP:           By:  B. LINDSAY CRAWFORD, III, ESQ.
                           P.O. Box 4216
                           Columbia, South Carolina 29240

For Unsecured Creditors    Clawson & Staubes, LLC
Committee:                 By:  J. RONALD JONES, JR., ESQ.
                           126 Seven Farms Drive, Suite 200
                           Charleston, South Carolina 29492-7595

                           Gardere Wynne Sewell LLP
                           By:  STEPHEN A. McCARTIN, ESQ.
                           1601 Elm Street Suite 3000
                           Dallas, Texas 75201
```

```
APPEARANCES:
(Continued)

Counsel for AFG, LLC:      Hagood & Kerr, PA
                           By:  ROBERT A. KERR, JR., ESQ.
                           P.O. Box 220
                           Mount Pleasant, South Carolina 29465

For Melrose Club, Inc.:    Buist, Moore, Smythe & McGee, PA
                           By: CHARLES PELOT SUMMERALL, IV, ESQ.
                           5 Exchange Street
                           Charleston, South Carolina 29401

                           Beard Law Offices
                           By:  T. ALEXANDER BEARD, ESQ.
                           1002 Anna Knapp Boulevard, Suite 202
                           Mount Pleasant, South Carolina  29464

For CSE Mortgage, LLC:     Warren & Sinkler, LLP
                           By:  MARK S. SHARPE, ESQ.
                           171 Church Street, Suite 340
                           Charleston, South Carolina 29401

For William Dixon          McCarthy Law Firm
and Gail Dixon:            By:  G. WILLIAM McCARTHY, ESQ.
                           1715 Pickens Street
                           Columbia, South Carolina 29201
```

4

1      (As requested, only the portion of the Court's ruling is
2  transcribed.)
3          THE COURT:  Would you please be seated?  Mr.
4  Nossokoff, I need to ensure before I indicate a ruling, inquire
5  about the status of Item Number 1 on the docket, the continued
6  final hearing on the motion to use cash collateral.
7          MR. NOSSOKOFF:  Yes, sir.
8          THE COURT:  This is the AFG loan, I guess?
9          MR. NOSSOKOFF:  Yes, sir.
10          THE COURT:  So, where does that stand?  Should I
11  enter an order in regards to that, or is it dependent upon the
12  ruling?  I don't want to neglect to finally validate a loan
13  process in which monies passed.
14          MR. NOSSOKOFF:  We would not let you do that.  We had
15  talked about that just a few minutes ago, that I think it's all
16  really dependent upon the rulings that you issue today.  And
17  Mr. Kerr can speak for himself, but I think he certainly is not
18  in favor of going forward with the use cash collateral.  We
19  obviously assert our right to do so.
20          And so if the DIP's allowed first as a subordinated
21  cash collateral right, and if it's not allowed, we still would
22  push the use of cash collateral, but obviously we need it for
23  purposes coming up for this week anyway.  So, I would suggest
24  that I would like the order entered.
25          THE COURT:  Okay.

1          MR. NOSSOKOFF:  Okay.

2          THE COURT:  I follow you.

3          MR. NOSSOKOFF:   And --

4          MR. KERR:  And, Your Honor, we object.  We don't

5    consent to the use of cash collateral.  We have -- we had a

6    deadline for a February interest payment.  It passed.  We

7    extended, based on the good graces of our client, that deadline

8    until the order that Your Honor entered earlier this week, and

9    a payment is due tomorrow.  But --

10          THE COURT:  Okay.  Well, don't let me leave without

11   addressing it further today.

12          MR. KERR:  All right.

13          THE COURT:  Because I didn't want to overlook it, and

14   then there'd be some critical need to address it.  I wasn't

15   sure whether it was a final approval of what had been done or,

16   as I understand it, it's still an issue -- could be an issue of

17   contest in going forward.  So -- all right.

18          The -- I'd like to offer some comments at this time

19   which would be an indication of ruling on the matters before

20   the Court today.  And specifically the motion to reject the

21   transfer agreement filed by the debtor in possession and the

22   motion to incur debt.

23          As I indicated in some statements earlier, there are

24   various cases from around the country that address the issue

25   first on the motion to reject, whether options are executory or

1  not and, therefore, subject to this summary process, a

2  rejection by a trustee or a debtor in bankruptcy -- debtor in

3  possession in bankruptcy.  Still fewer cases that I've read

4  address the significance of the indication that -- or

5  obligation that covenants run with the land.  There were other

6  issues that have been raised in this case by the parties.

7          Many of the cases that I have read depend upon the

8  laws of the State in which they -- in which the contract or the

9  agreement is entered, which govern the nature of the

10 enforceability of the agreements at issue.  And all that I have

11 read depend upon an interpretation of the subject agreement and

12 assert the intent of the parties to that agreement.

13         A reference to these various national authorities,

14 and even the law of South Carolina when necessary to make this

15 determination, has been of some help, but of limited help to

16 the Court in this matter.

17         What I am convinced of is that a determination of the

18 motion to reject in this case depends upon the language of this

19 agreement and the documents that relate to it as entered by the

20 parties.

21         The parties' critical rights at issue today, as you

22 have all argued and all have known, depend upon what has been

23 indicated as Article 5.1 of the transfer agreement.

24         The burden of prevailing on the motion to reject

25 falls upon the debtor or the movant in this case.

1    I am also convinced that this Court is bound by the

2  terms of Section 365 of the Bankruptcy Code and State law.  And

3  that I cannot invoke any equitable authorities or Section 105

4  of the Bankruptcy Code to determine these issues.

5    It's been stated the decision today is driven by this

6  fairly early in the case lending motion which, upon itself,

7  should fall or rise upon the bankruptcy law that applies to it.

8  And I'll make a determination of it following a ruling on the

9  transfer agreement.

10    This Court can't make any use of its determinations

11  based upon how I wish it would turn out, or the sympathies that

12  I have for any parties, or even the dilemma that the parties

13  have gotten themselves in.

14    I am keenly interested in a reorganization working

15  out, and that all constituents, creditors, secured and

16  unsecured, investors, you know, we're always interested in all

17  of you recovering your investments and your money.

18    We also are interested in reorganizations working

19  because assets are valuable and should be -- continue to be a

20  value to the community.  And in this case, I consider these --

21  the assets at issue to be important to the State of South

22  Carolina.

23    But for the reasons that I will summarize and set out

24  in a written order to be prepared after today, I find that the

25  motion to reject should be denied.

1          I'm indicating this ruling, and I'm declaring the

2    rights as I interpret it that are only necessary to determine

3    the motion.   I am sensitive that this should not be a full and

4    final adjudication of all the rights between the parties.   And

5    I feel that many of these issues should be addressed in an

6    adversary proceeding that could be filed before this Court.

7          In looking at the agreement at issue, in my view, the

8    critical provision is not a right of first refusal which

9    necessitates an offer, an action by a third party.   But it is

10   an unexercised option.

11         I believe that Article 5 of Article 5.1 is, in fact,

12   divisible and not part of the -- should not be construed as

13   part of the agreement as determined by the intent of the

14   parties.

15         By its nature and purpose, it's susceptible to

16   division under the authority cited by Mr. Summerall.   In

17   addition to that, the <u>Columbia Architectural Group</u> case, the

18   <u>Packard and Field</u> case.

19         These sections are not -- the general transfer

20   agreement in this one section appear by its language to be

21   intended to be separate.   They are not necessarily dependent

22   upon each other.

23         The transfer agreement, for instance, contemplates a

24   failure, that any failure to perform the additional obligations

25   would be a default, to be identified by notice from the non-

defaulting party, and actually provides an opportunity to cure.

The remedy section of the entire agreement specifies

arbitration as the remedy, and allows equitable enforcement,

even specific performance of the transfer agreement.

There is a certain mutuality of obligations.

Whereas, Section 5.1 is viewed by this Court as an option.  It

is, as counsel has argued, only triggered by the debtor's --

oh, in this case, the debtor's election not to perform, and

then provides the -- and I guess can say -- MCI the option of

making a further decision.

It's not part of the default or remedy section under

the transfer agreement.  It's not cross referenced to those

matters.

It is the only place in the transfer agreement where

the parties specify that it is a covenant running with the

land, and it emphasizes the need for recording in specified

language.  In my view, it is a contract within a contract.

The determination then would be whether that option

fits within the definition of executory contract, which the

parties have noted as defined by <u>Countryman</u> to be an instance

when the obligation of both parties are so far unperformed that

the failure of either to complete performance would constitute

a material breach, excusing the performance of the other party.

In my view, the unexercised option on the date of the

petition does not constitute unperformed obligations on the

1  part of the parties.

2         I agree with the authority, and some of which I'll

3  mention by case name:  The <u>Robert Helms</u> case, the <u>Burke</u> case,

4  the <u>BYN Funding</u> case <u>versus U.S. Air</u>, the <u>National Financial</u>

5  case, and I'm not sure how to pronounce it, <u>Gouveia</u>, G-O-V --

6  G-O-U-V-E-I-A.

7         In this instance, these authorities indicate, and I

8  agree with them, that at the time of the petition, which is the

9  critical date, there had been no election made by the debtor.

10 Therefore, creating no obligations under the option on either

11 party.

12        I'd also note that it appears to the Court the

13 consideration had previously passed that the -- that upon the

14 exercise of any option, there would be limited and equal

15 assumption of liabilities for the reconveyance.  And in many

16 instances, I interpreted it as similar to returning to the

17 status quo before the transfer.

18        I believe the facts in our case is distinguishable

19 from the <u>Lubrizol</u> and my previous case in <u>Ducane</u> -- or order in

20 <u>Ducane</u>.

21        I would further and separately indicate that even if

22 this were an executory contract, as we all know, that if it was

23 rejected, it's deemed a breach.  But that breach does not mean

24 termination of the rights between the parties.  I'm not fully

25 sure that upon determination -- the termination to adjudication

1  that the -- MCI would not be entitled to specific performance

2  as a remedy.

3         South Carolina law indicates in a number of decisions

4  that when performance is closely connected to specified real

5  estate, that equitable remedies are preferred.  And I would

6  cite or mention the Murray versus Northwestern case, the Ingram

7  and a case Adam versus Willis.

8         Finally, I believe for purposes of determining this

9  motion that the rights embodied in Article 5.1 do constitute

10 property interest under South Carolina law.  I believe it meets

11 all the indications that are required by the T2 Green case, the

12 expressed attention -- intention of the parties, the

13 requirement that intention concerns the land.  Clearly the

14 language was intended to mean this in my view.  It was intended

15 to be specialized language to bind parties and successors in

16 title to these provisions.

17        It was further substantiated by the fact that the

18 parties consistently recognized these rights and recorded

19 instruments, that they were subject of discussion and

20 preservation in the transfer to the debtor.  And that as

21 indicated by the evidence today, was mentioned in deeds,

22 mortgages, and title insurance property.

23        Further, I'd find that as a property interest, it is

24 not subject to Section 365 and, therefore, not subject to

25 rejection.  At the very least, I believe that the property

1   rights that the -- this party has is a right to enforce

2   provisions of the agreement.  It's a right that springs from

3   the ownership of property from the taking of title -- of the

4   passing of title.

5           But it could -- it could very well be that they're

6   unalterable rights that are subject to -- not subject to

7   damages as a breach, but are subject to enforcement by

8   injunction or specific performance.  And South Carolina

9   recognized the injunction remedy in the case of <u>Houck versus</u>

10  <u>Rivers</u>.

11          I further believe that 7001 is the proper rule to

12  apply to this kind of determination.  That while I understand

13  the debtor's need is to seek this determination as early as

14  possible in the case, it is my view that it is a determination

15  of the validity of rights of the party.  And further, it is

16  seeking the Court to full and finally declare the rights of

17  parties which are matters covered by 7001.

18          I think that this matter is such a close call in many

19  respects that had I decided that it were an executory contract

20  subject to rejection, before allowing it to be a final order in

21  which a party would then be able to take precedent by a further

22  order of lending over these interests, I would stay the effect

23  of the decision for purposes of an appeal, which I recognize

24  would be problematic for the loan at issue today.

25          For those general reasons, which I'm sure, and I

1 apologize for not being very articulate in stating them, but

2 it's been a long day.  But I'm satisfied and convinced that

3 even in this hard, hard decision, that it's the right decision

4 under the law.  And it's the best decision that I could make.

5       And, therefore, I would deny the motion to reject

6 this as an executory contract.

7       I'd ask Mr. Summerall or Mr. Beard to prepare a

8 written order that I'd review that would include the citations

9 that I made, and other citations of authority that you argued.

10      Now, with that being said, I would next turn to the

11 issue before the Court of the request for a motion to incur

12 debt.  I understand from Mr. Nossokoff that the statement's

13 been made that the lending is predicated upon the Court order

14 rejecting this interest.  I have not done that.  So, where does

15 that stand?  Mr. Crawford or Mr. Nossokoff?

16      MR. NOSSOKOFF:  The question is about priming the

17 rights, if it is a property right, can it be primed.  If I hear

18 His Honor correctly, he may be speaking then about determining

19 what the property rights are.  And if you're going to T2, the

20 T2 case, that's where you were there.  You're determining the

21 rights of the parties under an adversary proceeding and how far

22 the property rights may go.  So --

23      THE COURT:  I think that's correct.

24      MR. NOSSOKOFF:  Okay.  If that's the case --

25      THE COURT:  It wouldn't be done today.  It would be a

1  future --

2         MR. NOSSOKOFF:    All right.  So, the answer is no.

3  Then the lender stands by its commitment and will not allow the

4  commitment to go forward.

5         THE COURT:  Okay.  Then in terms of a further ruling

6  on the propriety of the motion to incur debt, it seems to be

7  moot at this time.

8         Okay.  In conclusion, I would say, as I introduced

9  these statements to you, that I wish there was a way.  And I

10  suggest to the parties that the only way to be successful in

11  this case is to all work together, as you have attempted to do

12  so far, and for which I commend you for.  But I mean the proof

13  is in any ability to sell property.  And at present, the debtor

14  is in possession.  And the debtor -- and the benefit to all

15  constituents, it seems to me, is to have some sort of process

16  by which property is sold.

17         The testimony was that it should be in an environment

18  which promotes the highest value.  It is no fault of anyone's,

19  I think, and I see it in many, many cases, but it's no solace

20  to you folks who suffer the consequences.  But it's no fault

21  that the economy is in such a circumstance that we cannot be as

22  hopeful or as -- or to receive the -- to accept the hopes of

23  parties that sales will turn around, different than the

24  history.  And that everything will be better through the summer

25  months.  It's just not -- I'm not convinced from the evidence

1  presented that it's a sure thing, or it's even likely.

2          I think, though, that, therefore, it requires the

3  parties to, in some way, consider whether their cooperation and

4  their support for each other could create that, as favorable a

5  marketing environment as you possibly can.  Because certainly

6  if sales were to pick up and to be accomplished, then secured

7  lenders would be paid, investors would be paid, and unsecured

8  creditors would have hopes of a dividend.

9          So, why I am preaching to the choir because all of

10  you are more experienced than I?  I do think that's probably

11  where you are.

12          But to the extent that there are suggestions for

13  other remedies or other belief that may have been discussed as

14  part of the motions or lending proposals today, they just have

15  to be brought by motion and we'll consider them at the time.

16          So, it's been a long day for all of us, and I stand

17  on these statements and ask for that order from Mr. Summerall.

18          The other matter, the motion to incur debt, for the

19  record is considered moot or withdrawn.  I'll consider it

20  withdrawn by the debtor based upon those statements.

21          I wish you luck.

22          MR. SUMMERALL:  Your Honor, if I may, first of all,

23  all of the parties thank you for your diligence because it has

24  been a hard day.  And Melrose Club will continue to work with

25  these parties.

1            What I really stood up to say is -- to ask you when

2    you would like the proposed order by?  And I wish I could tell

3    you I could get it to you by Friday, but I am going to be out

4    of state on vacation from Saturday until Thursday afternoon.

5    So, I would ask possibly two weeks from today to submit the

6    proposed order.

7            THE COURT:  What do you say about that?  Any party

8    comment on that?  Or object to it?  Or --

9            MR. LESEMANN:  Your Honor, if I could have a --

10                        (Pause)

11           MR. LESEMANN:  That's fine, Your Honor.

12           THE COURT:  Okay.  All right.

13           MR. SUMMERALL:  Thank you, sir.

14           THE COURT:  Now there is the final hearing on the

15   motion for cash collateral.  Now, we have the opportunity if --

16   and not to beg the question, but it seems to me that I have

17   some time tomorrow morning.  It kind of depends on where you

18   are and whether you need further discussions and whether you --

19           MR. KERR:  Your Honor, Robert Kerr for AFG.  My

20   client's in Denver, two hours behind us.  I do have some time.

21   I'd like to confer with them just to give them the lay of the

22   land, some rulings from today, effect the call, and I need to

23   bring them up-to-speed.  We do have some time to talk

24   midmorning.

25           THE COURT:  What time?  10 or 10:30?

1                (The Court conferring off the record)

2           THE COURT:  I would suggest that you arrive at 10

3 tomorrow, if it suits your schedule.  And it may be that I

4 couldn't hear you at 10, but I had matters scheduled at 10:30

5 that have been removed, right?

6                (The Court conferring off the record)

7           THE COURT:  So, that would allow you to address it in

8 the morning before I left Charleston.

9           MR. KERR:  All right.  Thank you.

10          THE COURT:  So, we continue --

11          MR. KERR:  Without prejudice to the rights of Melrose

12 Club, Inc.

13          THE COURT:  We would continue it.  And, you know,

14 anyone that needs to be here can be here.  But it just is too

15 to try to take us a contested -- further contested matter, it

16 seems to me.  And I understand, at least from what I heard of

17 the testimony, it varied as far as shutdown today.  I am not

18 interested in these facilities being shutdown, but I don't --

19 you know, I can't create money for you.  So, it does sound like

20 you can carry through the weekend, potentially.  So, tomorrow

21 wouldn't be a prejudice to anyone to hear it.

22          MR. NOSSOKOFF:  No.

23          THE COURT:  Okay?

24          MR. NOSSOKOFF:  Yes, sir.

25          THE COURT:  Anything else?

18

1          MR. NOSSOKOFF:  That's it, sir.

2          MULTIPLE SPEAKERS:  Thank you, Your Honor.

3          THE COURT:  Thank you.  Good luck.

4

5      (Whereupon, at 7:05 P.M. the hearing was adjourned.)

6

7                          CERTIFICATE

8

9      I certify that the foregoing is a correct transcript from

10 the electronic sound recording of the proceedings in the

11 above-entitled matter.

12

13

14  /s/  *Karen Hartmann*                    Date:  March 13, 2009

15 TRANSCRIPTS PLUS, INC.

16

17

18

19

20

21

22

23

24

25

/
/S/- 18:14

1
1- 4:5
10- 16:25 17:2,4
105- 7:3
10:30- 16:25 17:4
13- 18:14

2
2009- 18:14

3
365- 7:2 11:24

5
5- 8:11
5.1- 6:23 8:11
9:6 11:9

7
7001- 12:11,17
7:05- 18:5

A
ABILITY- 14:13
ABLE- 12:21
ACCEPT- 14:22
ACCOMPLISHED-
15:6
ACTION- 8:9
ADAM- 11:7
ADDITION- 8:17
ADDITIONAL- 8:24
ADDRESS- 5:14,24
6:4 17:7
ADDRESSED- 8:5
ADDRESSING- 5:11
ADJOURNED- 18:5
ADJUDICATION- 8:4
10:25
ADVERSARY- 8:6
13:21
AFG- 4:8 16:19
AFTERNOON- 16:4
AGREE- 10:2,8
AGREEMENT- 5:21
6:9,11,12,19,23
7:9 8:7,13,20,23
9:2,4,12,14 12:2
AGREEMENTS- 6:10
AIR- 10:4
ALLOW- 14:3 17:7
ALLOWED- 4:20,21
ALLOWING- 12:20
ALLOWS- 9:3
ANSWER- 14:2
ANYONE'S- 14:18
ANYWAY- 4:23
APOLOGIZE- 13:1
APPEAL- 12:23
APPEAR- 8:20
APPEARS- 10:12
APPLIES- 7:7
APPLY- 12:12
APPROVAL- 5:15
ARBITRATION- 9:3

ARCHITECTURAL-
8:17
ARGUED- 6:22 9:7
13:9
ARRIVE- 17:2
ARTICLE- 6:23
8:11 11:9
ARTICULATE- 13:1
ASSERT- 4:19 6:12
ASSETS- 7:19,21
ASSUMPTION- 10:15
ATTEMPTED- 14:11
ATTENTION- 11:12
AUTHORITIES- 6:13
7:3 10:7
AUTHORITY- 8:16
10:2 13:9

B
BANKRUPTCY- 6:2,3
7:2,4,7
BASED- 5:7 7:11
15:20
BEARD- 13:7
BEHIND- 16:20
BELIEF- 15:13
BENEFIT- 14:14
BETWEEN- 8:4
10:24
BIND- 11:15
BOTH- 9:21
BOUND- 7:1
BREACH- 9:23
10:23 12:7
BROUGHT- 15:15
BURDEN- 6:24
BURKE- 10:3
BYN- 10:4

C
CALL- 12:18 16:22
CAN- 4:17 9:9
13:17 15:5
17:14,20
CAN'T- 7:10 17:19
CANNOT- 7:3 14:21
CAROLINA- 6:14
7:22 11:3,10 12:8
CARRY- 17:20
CASE- 6:6,18,25
7:6,20 8:17,18
9:8
10:3,4,5,18,19
11:6,7,11 12:9,14
13:20,24 14:11
CASES- 5:24 6:3,7
14:19
CASH-
4:6,18,21,22 5:5
16:15
CERTAIN- 9:5
CERTAINLY- 4:17
15:5
CERTIFICATE- 18:7
CERTIFY- 18:9
CHARLESTON- 17:8
CHOIR- 15:9
CIRCUMSTANCE-
14:21

CITATIONS- 13:8,9
CITE- 11:6
CITED- 8:16
CLEARLY- 11:13
CLIENT'S- 16:20
CLOSE- 12:18
CLOSELY- 11:4
CLUB- 15:24 17:12
CODE- 7:2,4
COLLATERAL-
4:6,18,21,22 5:5
16:15
COLUMBIA- 8:17
COMING- 4:23
COMMEND- 14:12
COMMENT- 16:8
COMMENTS- 5:18
COMMITMENT-
14:3,4
COMMUNITY- 7:20
COMPLETE- 9:22
CONCERNS- 11:13
CONCLUSION- 14:8
CONFER- 16:21
CONFERRING-
17:1,6
CONNECTED- 11:4
CONSENT- 5:5
CONSEQUENCES-
14:20
CONSIDER- 7:20
15:3,15,19
CONSIDERATION-
10:13
CONSIDERED- 15:19
CONSISTENTLY-
11:18
CONSTITUENTS-
7:15 14:15
CONSTITUTE-
9:22,25 11:9
CONSTRUED- 8:12
CONTEMPLATES-
8:23
CONTEST- 5:17
CONTESTED- 17:15
CONTINUE- 7:19
15:24 17:10,13
CONTINUED- 4:5
CONTRACT- 6:8
9:17,19 10:22
12:19 13:6
CONVINCED- 6:17
7:1 13:2 14:25
COOPERATION- 14:23
CORRECT- 13:23
18:9
CORRECTLY- 13:18
COULDN'T- 17:4
COUNSEL- 9:7
COUNTRY- 5:24
COUNTRYMAN- 9:20
COURT'S- 4:1
COVENANT- 9:15
COVENANTS- 6:5
COVERED- 12:17
CRAWFORD- 13:15
CREATE- 15:4
17:19

CREATING- 10:10
CREDITORS- 7:15
15:8
CRITICAL- 5:14
6:21 8:8 10:9
CROSS- 9:12
CURE- 9:1

D
DAMAGES- 12:7
DATE- 9:24 10:9
18:14
DAY- 13:2
15:16,24
DEADLINE- 5:6,7
DEBT- 5:22 13:12
14:6 15:18
DEBTOR- 5:21
6:2,25 10:9 11:20
14:13,14 15:20
DEBTOR'S- 9:7,8
12:13
DECIDED- 12:19
DECISION- 7:5
9:10 12:23 13:3,4
DECISIONS- 11:3
DECLARE- 12:16
DECLARING- 8:1
DEEDS- 11:21
DEEMED- 10:23
DEFAULT- 8:25
9:11
DEFAULTING- 9:1
DEFINED- 9:20
DEFINITION- 9:14
DENIED- 7:25
DENVER- 16:20
DENY- 13:5
DEPEND- 6:7,11,22
DEPENDENT-
4:11,16 8:21
DEPENDS- 6:18
16:17
DETERMINATION-
6:15,17 7:8 9:18
10:25 12:12,13,14
DETERMINATIONS-
7:10
DETERMINE- 7:4
8:2
DETERMINED- 8:13
DETERMINING- 11:8
13:18,20
DIDN'T- 5:13
DIFFERENT- 14:23
DILEMMA- 7:12
DILIGENCE- 15:23
DIP'S- 4:20
DISCUSSED- 15:13
DISCUSSION- 11:19
DISCUSSIONS-
16:18
DISTINGUISHABLE-
10:18
DIVIDEND- 15:8
DIVISIBLE- 8:12
DIVISION- 8:16
DOCKET- 4:5
DOCUMENTS- 6:19

DRIVEN- 7:5
DUCANE- 10:19,20
DUE- 5:9

E
EACH- 8:22 15:4
EARLIER- 5:8,23
EARLY- 7:6 12:13
ECONOMY- 14:21
EFFECT- 12:22
16:22
ELECTION- 9:8
10:9
ELECTRONIC- 18:10
EMBODIED- 11:9
EMPHASIZES- 9:16
ENFORCE- 12:1
ENFORCEABILITY-
6:10
ENFORCEMENT- 9:3
12:7
ENSURE- 4:4
ENTER- 4:11
ENTERED- 4:24 5:8
6:9,19
ENTIRE- 9:2
ENTITLED- 11:1
ENVIRONMENT-
14:17 15:5
EQUAL- 10:14
EQUITABLE- 7:3
9:3 11:5
ESTATE- 11:5
EVERYTHING- 14:24
EVIDENCE- 11:21
14:25
EXCUSING- 9:23
EXECUTORY- 5:25
9:19 10:22 12:19
13:6
EXERCISE- 10:14
EXPERIENCED-
15:10
EXPRESSED- 11:12
EXTENDED- 5:7
EXTENT- 15:12

F
FACILITIES- 17:18
FAILURE- 8:24
9:22
FAIRLY- 7:6
FALL- 7:7
FALLS- 6:25
FAR- 9:21 13:21
14:12 17:17
FAULT- 14:18,20
FAVOR- 4:18
FAVORABLE- 15:4
FEBRUARY- 5:6
FEEL- 8:5
FIELD- 8:18
FILED- 5:21 8:6
FINAL- 4:6 5:15
8:4 12:20 16:14
FINALLY- 4:12
11:8 12:16
FINANCIAL- 10:4
FIND- 7:24 11:23

FINE- 16:11
FIRST- 4:20 5:25
8:8 15:22
FOLKS- 14:20
FOLLOW- 5:2
FOLLOWING- 7:8
FOREGOING- 18:9
FORWARD- 4:18
5:17 14:4
FRIDAY- 16:3
FULL- 8:3 12:16
FULLY- 10:24
FUNDING- 10:4
FURTHER- 5:11
9:10 10:21
11:17,23
12:11,15,21 14:5
16:18 17:15
FUTURE- 14:1

**G**
GENERAL- 8:19
12:25
GET- 16:3
GIVE- 16:21
GO- 13:22 14:4
GOING- 4:18 5:17
13:19 16:3
GOOD- 5:7 18:3
GOUVEIA- 10:5,6
GOVERN- 6:9
GRACES- 5:7
GREEN- 11:11
GROUP- 8:17
GUESS- 4:8 9:9

**H**
HARD- 13:3 15:24
HEAR- 13:17
17:4,21
HEARD- 17:16
HEARING- 4:6
16:14 18:5
HELMS- 10:3
HELP- 6:15
HIGHEST- 14:18
HISTORY- 14:24
HOPEFUL- 14:22
HOPES- 14:22 15:8
HOUCK- 12:9
HOURS- 16:20

**I**
IDENTIFIED- 8:25
IMPORTANT- 7:21
INC- 17:12 18:15
INCUR- 5:22 13:11
14:6 15:18
INDICATED- 5:23
6:23 11:21
INDICATES- 11:3
INDICATING- 8:1
INDICATION- 5:19
6:4
INDICATIONS-
11:11
INGRAM- 11:6
INJUNCTION-

12:8,9
INQUIRE- 4:4
INSTANCE- 8:23
9:20 10:7
INSTANCES- 10:16
INSTRUMENTS-
11:19
INSURANCE- 11:22
INTENDED- 8:21
11:14
INTENT- 6:12 8:13
INTENTION-
11:12,13
INTEREST- 5:6
11:10,23 13:14
INTERESTED-
7:14,16,18 17:18
INTERESTS- 12:22
INTERPRET- 8:2
INTERPRETATION-
6:11
INTERPRETED-
10:16
INTRODUCED- 14:8
INVESTMENTS- 7:17
INVESTORS- 7:16
15:7
INVOKE- 7:3
ISSUE- 4:16
5:16,24 6:10,21
7:21 8:7 12:24
13:11
ISSUES- 6:6 7:4
8:5
IT'S- 4:15,21
5:16 7:5 8:15
9:11,12 10:23
12:2 13:2,3,4
14:19,20,25
15:1,16
ITEM- 4:5

**K**
KEENLY- 7:14
KERR- 4:17 5:4,12
16:19 17:9,11
KNOWN- 6:22

**L**
LAND- 6:5 9:16
11:13 16:22
LANGUAGE- 6:18
8:20 9:17
11:14,15
LEAVE- 5:10
LEFT- 17:8
LENDER- 14:3
LENDERS- 15:7
LENDING- 7:6
12:22 13:13 15:14
LESEMANN- 16:9,11
LIABILITIES-
10:15
LIMITED- 6:15
10:14
LOAN- 4:8,12
12:24
LONG- 13:2 15:16
LOOKING- 8:7

LUBRIZOL- 10:19
LUCK- 15:21 18:3

**M**
MAKING- 9:10
MANY- 6:7 9:10
10:15 12:18 14:19
MARCH- 18:14
MARKETING- 15:5
MATERIAL- 9:23
MATTER- 6:16
12:18 15:18 17:15
18:11
MATTERS- 5:19
9:13 12:17 17:4
MCI- 9:9 11:1
MEETS- 11:10
MELROSE- 15:24
17:11
MIDMORNING- 16:24
MONEY- 7:17 17:19
MONIES- 4:13
MONTHS- 14:25
MOOT- 14:7 15:19
MORNING- 16:17
17:8
MORTGAGES- 11:22
MOTION- 4:6
5:20,22,25
6:18,24 7:6,25
8:3 11:9 13:5,11
14:6 15:15,18
16:15
MOTIONS- 15:14
MOVANT- 6:25
MULTIPLE- 18:2
MURRAY- 11:6
MUTUALITY- 9:5

**N**
NATIONAL- 6:13
10:4
NECESSARILY- 8:21
NECESSARY- 6:14
8:2
NECESSITATES- 8:9
NEGLECT- 4:12
NON- 8:25
NORTHWESTERN-
11:6
NOSSOKOFF-
4:4,7,9,14 5:1,3
13:12,15,16,24
14:2 17:22,24
18:1
NOTE- 10:12
NOTED- 9:20
NOTICE- 8:25

**O**
OBJECT- 5:4 16:8
OBLIGATION- 6:5
9:21
OBLIGATIONS- 8:24
9:5,25 10:10
OBVIOUSLY-
4:19,22
OFFER- 5:18 8:9
ONE- 8:20

OPPORTUNITY- 9:1
16:15
OPTION- 8:10
9:6,9,18,24
10:10,14
OPTIONS- 5:25
ORDER- 4:11,24
5:8 7:24 10:19
12:20,22 13:8,13
15:17 16:2,6
OVERLOOK- 5:13
OWNERSHIP- 12:3

**P**
PACKARD- 8:18
PAID- 15:7
PARTIES-
6:6,12,20 7:12
8:4,14 9:15,20,21
10:1,24
11:12,15,18 12:17
13:21 14:10,23
15:3,23,25
PARTIES'- 6:21
PARTY- 8:9 9:1,23
10:11 12:1,15,21
16:7
PASSED- 4:13 5:6
10:13
PASSING- 12:4
PAUSE- 16:10
PAYMENT- 5:6,9
PERFORM- 8:24 9:8
PERFORMANCE-
9:4,22,23 11:1,4
12:8
PETITION- 9:25
10:8
PICK- 15:6
PLACE- 9:14
PM- 18:5
PORTION- 4:1
POSSESSION- 5:21
6:3 14:14
POTENTIALLY-
17:20
PREACHING- 15:9
PRECEDENT- 12:21
PREDICATED- 13:13
PREFERRED- 11:5
PREJUDICE-
17:11,21
PREPARE- 13:7
PREPARED- 7:24
PRESENT- 14:13
PRESENTED- 15:1
PRESERVATION-
11:20
PREVAILING- 6:24
PREVIOUS- 10:19
PREVIOUSLY- 10:13
PRIMED- 13:17
PRIMING- 13:16
PROBABLY- 15:10
PROBLEMATIC-
12:24
PROCEEDINGS-
18:10
PROCESS- 4:13 6:1

14:15
PROMOTES- 14:18
PRONOUNCE- 10:5
PROOF- 14:12
PROPER- 12:11
PROPERTY-
11:10,22,23,25
12:3 13:17,19,22
14:13,16
PROPOSALS- 15:14
PROPOSED- 16:2,6
PROPRIETY- 14:6
PROVIDES- 9:1,9
PROVISION- 8:8
PROVISIONS- 11:16
12:2
PURPOSE- 8:15
PURPOSES- 4:23
11:8 12:23
PUSH- 4:22

**Q**
QUO- 10:17

**R**
RAISED- 6:6
REASONS- 7:23
12:25
RECEIVE- 14:22
RECOGNIZE- 12:23
RECOGNIZED- 11:18
12:9
RECONVEYANCE-
10:15
RECORDED- 11:18
RECORDING- 9:16
18:10
RECOVERING- 7:17
REFERENCED- 9:12
REFUSAL- 8:8
REGARDS- 4:11
REJECT- 5:20,25
6:18,24 7:25 13:5
REJECTED- 10:23
REJECTING- 13:14
REJECTION- 6:2
11:25 12:20
RELATE- 6:19
REMEDIES- 11:5
15:13
REMEDY- 9:2,3,11
11:2 12:9
REMOVED- 17:5
REORGANIZATION-
7:14
REORGANIZATIONS-
7:18
REQUEST- 13:11
REQUESTED- 4:1
REQUIRED- 11:11
REQUIREMENT-
11:13
REQUIRES- 15:2
RESPECTS- 12:19
RETURNING- 10:16
RIGHTS- 6:21
8:2,4 10:24
11:9,18
12:1,6,15,16

13:17,19,21,22
17:11
**RISE-** 7:7
**RIVERS-** 12:10
**ROBERT-** 10:3
16:19
**RULE-** 12:11
**RULING-** 4:1,4,12
5:19 7:8 8:1 14:5
**RULINGS-** 4:16
16:22
**RUN-** 6:5
**RUNNING-** 9:15

___S___
**SALES-** 14:23 15:6
**SATISFIED-** 13:2
**SATURDAY-** 16:4
**SCHEDULE-** 17:3
**SCHEDULED-** 17:4
**SEATED-** 4:3
**SECTIONS-** 8:19
**SECURED-** 7:15
15:6
**SEE-** 14:19
**SEEK-** 12:13
**SEEKING-** 12:16
**SELL-** 14:13
**SENSITIVE-** 8:3
**SEPARATE-** 8:21
**SEPARATELY-** 10:21
**SET-** 7:23
**SHUTDOWN-**
17:17,18
**SIGNIFICANCE-** 6:4
**SIMILAR-** 10:16
**SOLACE-** 14:19
**SOLD-** 14:16
**SOUND-** 17:19
18:10
**SOUTH-** 6:14 7:21
11:3,10 12:8
**SPEAKERS-** 18:2
**SPECIALIZED-**
11:15
**SPECIFIC-** 9:4
11:1 12:8
**SPECIFICALLY-**
5:20
**SPECIFIED-** 9:16
11:4
**SPECIFIES-** 9:2
**SPECIFY-** 9:15
**SPRINGS-** 12:2
**STAND-** 4:10 13:15
15:16
**STANDS-** 14:3
**STATE-** 6:8 7:2,21
16:4
**STATEMENT'S-**
13:12
**STATEMENTS-** 5:23
14:9 15:17,20
**STATING-** 13:1
**STATUS-** 4:5 10:17
**STAY-** 12:22
**STOOD-** 16:1
**SUBORDINATED-**
4:20

**SUBSTANTIATED-**
11:17
**SUCCESSFUL-** 14:10
**SUCCESSORS-** 11:15
**SUFFER-** 14:20
**SUGGESTIONS-**
15:12
**SUITS-** 17:3
**SUMMARIZE-** 7:23
**SUMMARY-** 6:1
**SUMMER-** 14:24
**SUMMERALL-** 8:16
13:7 15:17,22
16:13
**SUPPORT-** 15:4
**SUSCEPTIBLE-** 8:15
**SYMPATHIES-** 7:11

___T___
**T2-** 11:11
13:19,20
**TAKING-** 12:3
**TERMINATION-**
10:24,25
**TERMS-** 7:2 14:5
**TESTIMONY-** 14:17
17:17
**THERE'D-** 5:14
**THEREFORE-** 6:1
10:10 11:24 13:5
15:2
**THIRD-** 8:9
**THURSDAY-** 16:4
**TIME-** 5:18 10:8
14:7 15:15
16:17,20,23,25
**TITLE-** 11:16,22
12:3,4
**TODAY-** 4:16
5:11,20 6:21
7:5,24 11:21
12:24 13:25 15:14
16:5,22 17:17
**TOGETHER-** 14:11
**TOMORROW-** 5:9
16:17 17:3,20
**TRANSCRIBED-** 4:2
**TRANSCRIPT-** 18:9
**TRANSCRIPTS-**
18:15
**TRANSFER-** 5:21
6:23 7:9 8:19,23
9:4,12,14 10:17
11:20
**TRIGGERED-** 9:7
**TRUSTEE-** 6:2
**TURN-** 7:11 13:10
14:23
**TWO-** 16:5,20

___U___
**UNALTERABLE-** 12:6
**UNEXERCISED-** 8:10
9:24
**UNPERFORMED-**
9:21,25
**UNSECURED-** 7:16
15:7
**UP-TO-SPEED-**
16:23

___V___
**VACATION-** 16:4
**VALIDATE-** 4:12
**VALIDITY-** 12:15
**VALUABLE-** 7:19
**VALUE-** 7:20 14:18
**VARIED-** 17:17
**VARIOUS-** 5:24
6:13
**VERSUS-** 10:4
11:6,7 12:9
**VIEW-** 8:7 9:17,24
11:14 12:14
**VIEWED-** 9:6

___W___
**WASN'T-** 5:14
**WE'RE-** 7:16
**WEEK-** 4:23 5:8
**WEEKEND-** 17:20
**WEEKS-** 16:5
**WHEREAS-** 9:6
**WHEREUPON-** 18:5
**WILL-** 7:23
14:3,23,24 15:24
**WILLIS-** 11:7
**WISH-** 7:11 14:9
15:21 16:2
**WITHDRAWN-**
15:19,20
**WORK-** 14:11 15:24
**WORKING-** 7:14,18
**WOULDN'T-** 13:25
17:21
**WRITTEN-** 7:24
13:8