# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 09-00389-jw |
| | ) | |
| **Daufuskie Island Properties, LLC,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION OF THE TRUSTEE FOR INTERIM AND FINAL ORDERS TO (I) AUTHORIZE POSTPETITION SECURED SUPERPRIORITY FINANCING PURSUANT TO BANKRUPTCY CODE §§ 105(a), 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d), (II) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO BANKRUPTCY CODE §§ 361, 362, 363 AND 364, (III) GRANT A LIMITED MODIFICATION OF THE AUTOMATIC STAY AND (IV) SET FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

---

Robert C. Onorato, as Trustee (the "Trustee") for the Chapter 11 bankruptcy estate of Daufuskie Island Properties, LLC (the "Debtor") hereby files this motion (the "Motion") to (i) authorize postpetition secured superpriority financing pursuant to 11 U.S.C. §§ 105(a), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (ii) grant adequate protection to prepetition secured parties pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, (iii) grant a limited modification of the automatic stay, and (iv) set the final hearing on the motion pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (hereinafter, the "Bankruptcy Rules"), and seeking entry of an order, in substantially the form attached hereto as **Exhibit A** (the "Interim Order"). In support of this Motion, the Trustee respectfully submits the following:

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b), and Local Civil Rule 83.IX.01, D.S.C. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory bases for the relief requested herein are sections 105(a), 363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 4001 of the Bankruptcy Rules, and Rules 4001-4 of the District of South Carolina Local Bankruptcy Rules (the "SCLBR").

## PROCEDURAL HISTORY

1.      On or about January 20, 2009 (the "Petition Date"), the Debtor filed its petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq.). The Debtor operated as the debtor-in-possession until the Trustee's appointment in this case.

2.      On March 17, 2009, the Court entered its Order Granting Joint Motion for Appointment of Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, granting the joint motion of the Official Committee of Unsecured Creditors (the "Committee"), Beach First National Bank ("Beach First") and AFG, LLC ("AFG") for the appointment of a trustee in this case. Thereafter, on March 20, 2009, the Court entered its Order Approving Appointment of Trustee, approving the United States Trustee's appointment of Robert C. Onorato as Trustee for the Debtor's Chapter 11 estate.

3.      The Debtor's assets include, but are not limited to, real property located on Daufuskie Island with structures and improvements which include an inn, cottages, duplexes, a beach club, two golf courses (the "Melrose Golf Course" and the "Bloody Point Golf Course"), tennis courts, a pool and other structures, improvements and fixtures (collectively, the "Assets"). The Debtor's real property is generally separated into real property contained in the Melrose Planned Unit Development (the "Melrose Real Property") and real property contained in the Bloody Point Planned Unit Development (the "Bloody Point Real Property"). The Melrose Golf Course, the Melrose Inn, the Melrose beach club and cottages are located on the Melrose Real

Property.  The Bloody Point Golf Course, miscellaneous maintenance buildings and structures and unsold residential lots are located on the Bloody Point Real Property.

4.      While a definitive title examination has not yet been completed, the Trustee is informed that the liens asserted by creditors against the Assets are predominantly asserted against the Melrose Real Property and, other than an outstanding mechanic's lien claim and a mortgage held by Beach First on two lots in Bloody Point, it appears that the Bloody Point Real Property is presently unencumbered.

5.      Beach First is a pre-petition creditor of the Debtor whose debt is secured by some of the Debtor's Assets, including two lots on the Bloody Point Real Property, cottages on the Melrose Real Property, and the beach club on the Melrose Real Property (the "Beach First Collateral").

6.      AFG is also a pre-petition creditor of the Debtor whose debt is secured by some of the Debtor's Assets, including the Melrose Golf Course, the Melrose Inn, and certain other real property (the "AFG Collateral").

7.      The Melrose Club, Inc. ("MCI") is an entity comprised of some members/owners of Daufuskie Island who assert certain rights (which include reconveyance rights) to approximately 300 acres of the Debtor's Assets which include, but are not limited to, the Melrose Golf Course, the Melrose Inn, the beach club and some cottages (the "Clouded Assets").

8.      Carolina Shores, LLC ("Carolina Shores") is a pre-petition creditor of the Debtor who holds a mortgage on some of the Debtor's Assets.  It is believed that Carolina Shores has a junior lien on the majority of its collateral but may hold a first lien on some Assets (the "Carolina Shores Collateral").  The amount of Carolina Shores debt and its collateral have not been established at this time.

9.    William Dixon, Jr. ("Dixon") asserts a mortgage on some of the Debtor's Assets but Dixon's claim as a secured creditor is disputed.

10.    Coastal Connections, Inc. and The Greenery (the "Mechanic's Lien Holders") assert mechanic's liens on some of the Debtor's Assets.

11.    This estate lacks cash with which to pay expenses necessary or appropriate to protect and properly maintain the Assets.  More specifically, the estate has only approximately $15,000 of cash in its accounts, to which AFG asserts a right of payment under certain cash collateral orders which have previously been entered in the case.  Other than the $15,000, upon information and belief, the Debtor's estate has no funds.

12.    The Assets are at risk and will depreciate if they are not properly maintained, which includes mowing grass, irrigating areas of the property, fertilizing and performing certain conditioning treatments on the golf courses, maintaining the structures and improvements on the property, and securing the Assets.

13.    The Trustee has had to have some work on the Assets performed to avoid immediate harm.  This work has included hiring security, mowing the grass, doing some repair work on the seawall, and cleaning food and other items from the structures (the "Pre-Loan Work").

14.    Beach First has indicated it is willing to lend $1 million to preserve the Assets on certain terms and conditions (the "Post-Petition Loan").  These terms and conditions include, but are not limited to, lending terms acceptable to Beach First which are generally set forth in the term sheet attached hereto as **Exhibit B**,[1] an agreement on the sales process (i.e., the timing allowed for marketing and sale efforts, and an exit plan for payment of the Post-Petition Loan on

---

[1] The draft term sheet attached as Exhibit B does not include certain agreed upon revisions that are favorable to the estate.  A revised draft of it will be filed on Friday, April 17, 2009.

or prior to its maturity), an agreement on the budgeted items that the loan proceeds will be used to pay, adequate protection payments to Beach First for the Beach First Collateral, and a subordination of all existing liens and claims (including MCI's asserted rights) to liens securing the Beach First Post-Petition Loan.

15.     The Debtor previously sought post-petition financing prior to the appointment of the Trustee and was offered less favorable terms than the proposed Beach First loan. In addition, the Trustee is informed that other parties also solicited potential post-petition lenders for new loan terms, but the Trustee and creditors still have not been able to obtain loan terms as favorable as the Beach First post-petition loan.

## RELIEF REQUESTED

By this Motion, the Trustee seeks the entry of an Interim Order to (i) authorize postpetition secured superiority financing pursuant to Bankruptcy Code §§ 105(a), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (ii) grant adequate protection to repetition secured parties pursuant to Bankruptcy Code §§ 361, 362, 363 and 364, (iii) grant a limited modification of the automatic stay, and (iv) set the final hearing on the Motion pursuant to Bankruptcy Rule 4001. An immediate and critical need exists for the Trustee to obtain funds in order to preserve the Assets.

In accordance with Bankruptcy Rule 4001 and SCBLR 4001-4, certain salient terms of the Beach First Post-Petition Loan are described below[2]. Additional terms are set forth in the term sheet attached as **Exhibit B**:

    a.  Borrower. Robert C. Onorato, as Trustee for the Chapter 11 bankruptcy estate of
        Daufuskie Island Properties, LLC

---

[2] To the extent anything in this Motion is inconsistent with the proposed Interim Order, Term Sheet and Loan Documents, the proposed Interim Order, Term Sheet and Loan Documents shall control.

b.  <u>Post-Petition Lender</u>.  Beach First National Bank

c.  <u>Amount of Loan</u>.  $1 million.

d.  <u>Closing Date</u>.  Upon entry of the Interim Order (defined herein) and all conditions precedent to the loan have been met.

e.  <u>Term</u>.  The loan shall terminate on the earliest of (such ending date, the "<u>Termination Date</u>"): (a) November 1, 2009, (b) the sale of substantially all of the Assets, (c) the conversion or dismissal of the Debtor's bankruptcy case; (d) an event of default under the Post-Petition Loan.

f.  <u>Budget</u>.  The Trustee's borrowings, disbursements and expenditures shall be limited, subject to certain variances, as set forth in a budget (the "<u>Budget</u>") attached hereto as **<u>Exhibit C</u>**.  The Budget shall be updated by the Trustee (with the reasonable consent and/or at the request of Beach First) from time to time, and the Trustee shall provide a report to Beach First not less than on a monthly basis (with delivery to Beach First on or before the 10th day of each month) showing the actual expenditures during the calendar month compared with budgeted and anticipated expenses for that same month.  The budget shall not be materially modified unless the modification is made with the consents of Beach First and the Committee, or by Order of the Court; provided, however, that the Trustee shall not be required to make expenditures allowed under the budget if he determines that such expenditures are not beneficial or in the best interest of the bankruptcy estate.

g.  <u>Use of Financing</u>.  The loan shall be used solely for (i) working capital to the extent set forth in the Budget, subject to certain variances, (ii) costs of

administration of the Chapter 11 case to the extent set forth in the Budget (as defined above), and (iii) certain fees and expenses of the Beach First.

h. <u>Collateral</u>. Subject to permitted encumbrances approved by Beach First in its sole discretion, the indebtedness to Beach First for Beach First's Post-Petition Loan and all interest, fees and expenses related thereto (a) will be entitled to super priority claim status pursuant to Section 364(c)(1) of the Bankruptcy Code, and (b) will be secured by (i) a perfected security interest (the "<u>Post-Petition Lien</u>") pursuant to Section 364(c)(2) and (c)(3) and Section 364(d) of the Bankruptcy Code (the liens securing Beach First's loan shall be senior to the liens securing any prepetition debt) in all of the Assets of the Debtor, including all real and personal property, whether now existing or hereafter arising (the "<u>Post-Petition Collateral</u>") subject to the Interim Order and the Final Order; provided, however, that notwithstanding the foregoing language, the Post-Petition Lien shall not include avoidance actions and recoveries from avoidance actions.   In addition, Beach First will have the right to utilize, at no cost or expense, any tradenames, trademarks, copyrights or other intellectual property to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of Post-Petition Collateral.  The Post-Petition Liens shall be first priority liens, senior to all other liens or security interests.

The term "<u>Post-Petition Collateral</u>" shall include, subject to the entry of a Final Order, the Trustee's rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof.

> Default Rights. Upon default under the Post-Petition Loan, or Termination Date, or
> as otherwise provided in the Post-Petition Loan documents, Beach First may
> foreclose on any of the Assets to recover the Post-Petition Loan. Prior to proceeding
> with a foreclosure action or any other state law remedies, Beach First acknowledges
> that it must file and serve on all interested parties a motion for relief from stay
> pursuant to 11 U.S.C. §362.

All parties in interest are encouraged to read **Exhibit B** in its entirety for terms and details of the
Post-Petition Loan.

A.    **Adequate Protection.**

The pre-petition lenders are entitled pursuant to Section 361 of the Bankruptcy Code to
adequate protection. As adequate protection against any diminution in value in the interests of
the prepetition lenders in the Assets from and after the Petition Date resulting from the
imposition of the Post-Petition Liens, the Interim Order provides that:

- Beach First is entitled to adequate protection payments equal to the interest payments
  on its pre-petition loan in the estimated amount of $35,000.00 per month.[3]

- to the extent of any diminution in value, the pre-petition lenders are adequately
  protected by the use of the loan proceeds to preserve and maintain the Assets and the
  equity in the Assets.

The Trustee requests entry of the proposed Interim Order and for authority to borrow
funds from Beach First as requested herein. The Trustee requests that, as part of the relief
granted, the Court Order that the stay under Rule 6004(g) of the Federal Rules of Bankruptcy
Procedure is not applicable to the provisions of the Interim Order.

---

[3] The resolution of Beach First's motion for relief from the stay will be separately noticed. In addition to the payment referenced
herein, the Trustee shall also maintain insurance on the collateral to resolve the motion for relief from stay.

After notice and a final hearing on the Motion, the Trustee requests entry of a final order in substantially the form of **Exhibit A** with only such conforming changes as necessary to reflect the entry of the Interim Order, the conducting of the final hearing pursuant to Bankruptcy Rule 4001, compliance with SCLBR 4001-4, and the applicable portions of the Budget (the "Final Order").

## BASIS FOR RELIEF REQUESTED

Section 364 of the Bankruptcy Code pertinently provides:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(c) and (d).

As discussed above, efforts have been made to obtain new secured credit from other sources but such efforts have been unsuccessful. A loan in the amount provided by Beach First is unavailable to the Trustee without granting liens pursuant to Bankruptcy Code §§ 364(c)(1), (2), (3), and 364(d). Therefore, the granting of liens under Bankruptcy Code §§ 364(c) and (d) is necessary and appropriate in this case.

The Beach First Post-Petition Loan has been negotiated in good faith and at arm's length between the Trustee, on the one hand, and Beach First, on the other, and the Trustee and Beach First have each been represented by separate counsel in this matter. Any loan extended and other financial accommodations made to the Trustee by Beach First will be extended by Beach First in good faith, as that term is used in Bankruptcy Code § 364(e). Thus, Beach First is entitled to protection as a good faith lender under Bankruptcy Code § 364(e).

Approval of the Beach First loan upon the terms and conditions set forth herein will allow the Trustee to maintain the Assets while attempting to sell the Assets to pay the creditors. The terms of the Beach First loan are fair and reasonable under the circumstances.

Under Section 361 of the Bankruptcy Code, adequate protection may be provided by granting other relief to the extent of a decrease in the value of such entity's interest in such property. The proposed Interim Order, if approved, will provide the prepetition lenders with adequate protection while allowing the Trustee an opportunity to market the Assets for sale.

The relief requested herein contemplates a limited modification of the automatic stay (to the extent applicable) only to the extent to permit the Trustee to (i) grant the security interests, liens, and super- priority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) permit Beach First to file all documents necessary to provide notice of its Post-Petition Lien; and (iii) implement the terms of the proposed Orders. Notwithstanding the limited modifications set forth herein, the automatic stay otherwise remains in full force and effect. Beach First shall file a motion for relief from the stay in the event of a default in the terms of the Post-Petition Loan unless such default shall be cured within any allowed time period.

Stay modifications of this kind are ordinary and standard features of postpetition debtor financing facilities and, in the Trustee's business judgment, are reasonable and fair under the present circumstances.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, in substantially the form attached hereto as **Exhibit A**, to (i) authorize postpetition secured superiority financing pursuant to Bankruptcy Code §§ 105(a), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (ii) grant adequate protection to prepetition secured parties pursuant to Bankruptcy Code §§ 361, 362, 363 and 364, (iii) grant a limited modification of the automatic stay, (iv) set the final hearing on the Motion pursuant to Bankruptcy Rule 4001, and (v) grant such other and further relief as may be appropriate.

/s/ Julio E. Mendoza, Jr.
Julio E. Mendoza, Jr. (Fed ID No. 3365)
Suzanne Taylor Graham Grigg (Fed ID No. 8064)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, South Carolina 29202
803-540-2026
803-727-1478
rmendoza@nexsenpruet.com
sgrigg@nexsenpruet.com

Attorneys for Robert C. Onorato, the Chapter 11 Trustee for the Estate of Daufuskie Island Properties, LLC, a/k/a Daufuskie Island Resort & Breathe Spa

April 16, 2009
Columbia, South Carolina

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

Case Number:  09-00329-jw


**INTERIM ORDER AUTHORIZING POSTPETITION CREDIT UNDER
§§ 105(a), 364(c) AND (d), AND GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED CREDITORS**

The relief set forth on the following pages, for a total of 3 pages including this page, is hereby
**ORDERED**.

1

EXHIBIT

_A_

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Case No. 0900389-jw |
| | ) | |
| **Daufuskie Island Properties, LLC,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## INTERIM ORDER AUTHORIZING POSTPETITION CREDIT UNDER §§ 105(a), 364(c) AND (d), AND GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS

This matter came before the Court on the motion (the "Motion") Robert C. Onorato, as Trustee (the "Trustee") for the Chapter 11 bankruptcy estate of Daufuskie Island Properties, LLC (the "Debtor"), for entry of an order (the "Order") to (i) authorize postpetition secured superiority financing pursuant to 11 U.S.C. §§ 105(a), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (ii) grant adequate protection to prepetition secured parties pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, (iii) modify the automatic stay, and (iv) set the final hearing on the Motion pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). It appearing that the relief requested herein is in the best interests of the bankruptcy estate, its creditors, and other parties in interest; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b), and that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion and opportunity for a hearing on the Motion was appropriate under the circumstances and that no other or further notice with respect to the Motion need be given; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED:

1.    The Motion is granted on an interim basis, pending the final hearing on the Motion.

2.    The Trustee is authorized to borrow $_____ from Beach First National Bank pursuant to the terms set forth in the Motion and the loan agreement.

3.    The Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

4.    The final hearing on the Motion is scheduled for May _____, 2009, at _____ __.m., in the United States Bankruptcy Court, 145 King Street, Room 225, Charleston, South Carolina.

5.    The stay provisions of Bankruptcy Rules 6004, 7062 and 9014, shall not apply to this Interim Order, and this Interim Order shall be immediately effective and enforceable upon its entry.

6.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

* * * * *



**Beach First®**
NATIONAL BANK

## DRAFT - FOR REVIEW &
## DISCUSSION PURPOSES ONLY

April ____, 2009

Chapter 11 Trustee for Daufuskie Island Properties, LLC

Re:  Non-Binding Proposed Term Sheet

Chapter 11 Trustee:

Beach First National Bank (hereinafter referred to as "Bank") is proposing to lend to the Chapter 11 Trustee for Daufuskie Island Properties, LLC (hereinafter referred to as "Borrower") the sum of One Million and No/100 ($1,000,000.00) Dollars as a commercial loan (hereinafter referred to as the "Loan") for the purpose of funding payment of approved post petition operating expenses during an agreed sales period.  Daufuskie Island Properties, LLC filed for relief pursuant to Chapter 11 of the United States Bankruptcy Code on January 20, 2009 (the "Bankruptcy Case").  On March 17, 2009, the Bankruptcy Court entered an order appointing a Chapter 11 Trustee.  This letter does not set forth all the terms and conditions of the proposed Loan.  Rather, it is only an outline, in summary format, of the major points of understanding which shall be the basis of the final loan documentation (hereinafter referred to collectively as the "Loan Documents"), which shall be drafted and/or approved by Bank.  The date on which the last of the Loan Documents is executed is hereinafter referred to as the "Closing Date".  The Loan Documents shall have many terms and conditions not set forth herein, including, but not limited to, conditions precedent, representations and warranties, affirmative covenants, negative covenants, events of default, definition of terms, and other provisions customary to financing (1) by Bank generally and (2) of the type contemplated by this letter.

1.  **Borrower**.  Chapter 11 Trustee for Daufuskie Island Properties, LLC

2.  **Debtor**.  Daufuskie Island Properties, LLC, a Delaware limited liability company

3.  **Purpose**.  The purpose of the Loan is for the funding payment of approved post petition operating expenses during an agreed sales period and sales process.

4.  **Interest Rate & Terms**.  The Loan will bear an interest rate of ten (10%) percent per annum.

The Loan shall be due and payable the earlier of the following: (1) November 1, 2009; (2) the effective date of a plan of reorganization which has been confirmed by an order of the United States Bankruptcy Court; (3) the date upon which a final order is entered by the Bankruptcy Court either (i)

---

EXHIBIT
B

## DRAFT - FOR REVIEW &
## DISCUSSION PURPOSES ONLY

March ____, 2009
Page 2

converting Debtor's Chapter 11 case to a case under Chapter 7, or (ii) approving the 363 sale of some or substantially all of Debtor's assets (unless agreed to by Bank), (iii) dismissal of Debtor's Bankruptcy Case, or (iv) the occurrence of an event of default under the Loan or any existing loan of Debtor.

The Net Sales Proceeds from the sale or conveyance of any of the Collateral (as defined below), insurance proceeds or condemnation proceeds shall be deposited in an escrow account (the "Escrow Account") held by Borrower.  "Net Sale Proceeds" are defined as gross sales price less: (a) sales commission not to exceed six (6%) percent of the sales price unless approved by Bank; (b) other closing costs and expenses not to exceed two (2%) percent of the sales price approved by Bank; and (c) in no event shall the release price be less than 92% of the sales price approved by Bank.  All parties holding a lien on such Collateral shall provide a release for the subject Collateral at the time of the closing of the sale and the lien shall transfer to the Net Sales Proceeds from that transaction which was deposited in the Escrow Account in the same amount and priority as against the Collateral.  The Escrow Account shall be disbursed as follows:

a.      Payment of the Loan in accordance with a formula which acknowledges various parties' responsibilities to repayment and benefit of the Loan and does not unfairly dilute Bank's Collateral position regarding its existing secured debt (the "Formula").  In no event shall any lien holder be paid prior to the Loan without Bank's express written consent.  The Formula will be agreed to prior to the closing of the Loan.

b.      Payment to the lien holders pursuant to the Formula.

5.    **Budget and Advances**.  Proceeds shall be advanced under the Loan at the request of Borrower which shall be made in writing in a form acceptable to Bank provided Borrower provides Bank with a monthly budget (hereinafter referred to as the "Budget") approved by Bank and a reconciliation of expenses at the end of each month during the term of the Loan.  The Budget shall include monthly payments of interest to Bank on the loan from Bank to Debtor dated June 26, 2008, in the original principal amount of Seven Million Two Hundred Four Thousand Two Hundred Forty-Three and No/100 ($7,204,243.00) Dollars.  The proceeds will not be advanced to Borrower unless (1) Bank approval of Borrower's monthly budgets, (2) Bank approves sales process of property, (3) all of the Loan Documents have been completed in a manner satisfactory to Bank and its counsel, and (4) all requirements set forth herein are satisfied.  No proceeds will be advanced while any event of default has occurred and has not been cured, or unless and until the conditions precedent have been fulfilled.

6.    **Default Interest Rate**.  The Loan will bear a default interest rate of fourteen (14%) percent per annum.

7.    **Fees and Expenses/Taxes**.  A commitment fee of Twenty Thousand and No/100 ($20,000.00) Dollars shall be paid upon closing of the Loan.  In addition, Borrower shall pay any and all legal fees (including Bank's counsel), recording fees, appraisal fees, documentary stamp and intangible taxes, a monthly

# DRAFT - FOR REVIEW &
## DISCUSSION PURPOSES ONLY

March _____, 2009
Page 3

administration fee in the amount of One Thousand and No/100 ($1,000.00) Dollars, and other costs incurred by Bank in connection with the making, documenting and closing of the Loan.

8.    **Collateral.**  To secure payment of the Loan, Borrower shall mortgage, assign, grant, pledge, or grant a security interest to Bank in the following Collateral (hereinafter referred to collectively as the "Collateral"):

   a.    A court-ordered priming lien and first priority senior security interest in all properties, assets and rights of Borrower, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all personal property and Fixtures of every kind and nature including without limitation all Goods (including Inventory, Equipment, Fixtures, and any Accessions thereto and As-Extracted Collateral), Farm Products, Instruments (including Promissory Notes), Documents, Accounts (including Health-Care-Insurance Receivables), Chattel Paper (whether tangible or electronic), Deposit Accounts, Letter-of-Credit Rights (whether or not the letter of credit is evidenced by a writing), Commercial Tort Claims, Securities and all other Investment Property, Supporting Obligations, Agricultural Liens, any other contract rights or rights to the payment of Money, insurance claims and Proceeds, Software, Vehicles, Watercraft and all General Intangibles (including all payment intangibles and all patents, copyrights, trademarks, tradenames and servicemarks) except for the equipment claimed by Turf and Textron.

   b.    A court-ordered priming lien and first priority senior security interest in Debtor's membership interest, stock or ownership in all companies that Debtor is a member, shareholder or owner.

   c.    A court-ordered priming lien and first priority senior Mortgage on all fee simple real property and the improvements thereon owned by Debtor as described in the attached **Exhibit A** (hereinafter referred to collectively as the "Property").

   d.    A court-ordered priming lien and first priority senior security interest assignment of leases, rents, and profits with respect to the Property.

   e.    A court-ordered priming lien and first priority senior security interest assignment of permits with respect to the Property.

   f.    A court-ordered priming lien and first priority senior security interest assignment of contracts with respect to the Property.

   g.    A court-ordered priming lien and first priority senior security interest assignment of any management agreements with respect to the Property.

   h.    A subordination from all lien holders with respect to the Property.

## DRAFT - FOR REVIEW &
## DISCUSSION PURPOSES ONLY

March ____, 2009
Page 4

     i.    To assist in the sale of the Beach Cottage Property as described in the attached **Exhibit A**, the Melrose Club, Inc. ("MCI") will, to the extent necessary to pay the Loan in full, release any claim on the which it may have under the Transfer Agreement by and between MCI and Melrose Club Management, Inc., a South Carolina corporation dated September 27, 1996 (hereinafter referred to as the "Transfer Agreement"). Nothing herein shall limit MCI's agreement to subordinate its rights, claims and interests in the Property to the Loan and any additional amounts loaned post-petition up to One Million Five Hundred Thousand and No/100 ($1,500,000.00) Dollars.

     **9.**    **Exit Fee**. Borrower shall pay two (2%) percent of the Loan amount upon any reduction of the Loan amount or repayment of the Loan.

     **10.**    **Secondary Financing**. No secondary financing or subordinate liens shall be permitted on the Property.

     **11.**    **Documents**. Each document required to be submitted to Bank pursuant to this loan transaction shall be in form and substance reasonably satisfactory to Bank or its counsel.

     **12.**    **Authorization**. Prior to the Closing Date, Borrower shall obtain a final order from the United States Bankruptcy Court approving the Loan and the execution of the Loan Documents by the Chapter 11 Trustee.

     **13.**    **Hazard Insurance**. On the Closing Date, Borrower shall provide Bank a hazard insurance policy for the replacement cost of the insurable items of the Collateral, naming Bank as lienholder/loss payee. The insurance company issuing the policy must be acceptable to Bank.

     **14.**    **Liability Insurance**. On the Closing Date, Borrower shall provide Bank a liability insurance policy for the replacement cost of the insurable items of the Collateral, naming Bank as lienholder/loss payee. The insurance company issuing the policy must be acceptable to Bank.

     **15.**    **Business Interruption**. On the Closing Date, Borrower shall provide Bank a business interruption insurance policy for the replacement cost of the insurable items of the Collateral, naming Bank as lienholder/loss payee. The insurance company issuing the policy must be acceptable to Bank.

     **16.**    **Title Insurance**. Borrower shall provide a standard ALTA mortgage policy from a company approved by Bank which shall (a) provide coverage for the full principal amount of the Loan, (b) delete all "standard exceptions" except taxes for the current year, (c) list only those exceptions acceptable to Bank, (d) include insurance of all appurtenant easements, (e) contain such affirmative coverage as may be required by Bank, and (f) contain such endorsements as deemed appropriate by Bank and its counsel. Title insurance and binders or commitments and copies of the documents creating title insurance exceptions shall be submitted to Bank and its counsel prior to the Closing Date.

## DRAFT - FOR REVIEW &
## DISCUSSION PURPOSES ONLY

March ____, 2009
Page 5

17.   **Environmental Audit**.   Prior to the Closing Date, Borrower shall deliver all existing environmental audits or reports, which shall be satisfactory to Bank in its sole discretion.

18.   **Survey**.   Prior to the Closing Date, Borrower shall deliver all existing plats and surveys of the Property to Bank, which shall be satisfactory to Bank in its sole discretion.

19.   **Flood Certification or Insurance**.   Prior to the Closing Date, Bank will obtain a determination of whether the Property is located in a "special flood, mud slide, or erosion hazard area". If all or any portion of the Property is located within such an area, Borrower shall provide Bank, prior to closing, with flood insurance acceptable to Bank in its sole discretion, naming Bank as mortgagee or loss payee.

20.   **Attorney Opinion**.   Reasonable and customary opinions of counsel to Borrower as to the transactions contemplated hereby which opinions are satisfactory to Bank.

21.   **Choice of Law and Jurisdiction**.   Borrower will agree in the Loan Documents to submit to the jurisdiction of the courts of the State of South Carolina and further agrees that the Loan Documents will be governed by the State of South Carolina.

22.   **Litigation**.   Except for Debtor's Chapter 11 case, there is no litigation or proceeding pending against Debtor, nor to the knowledge of Debtor threatened which, if decided adversely to Debtor, would have a material adverse effect upon the financial condition or businesses of Debtor.

23.   **Closing Requirements**.   Closing requirements for a loan of this nature shall apply.   All documents relative to this Loan must be satisfactory in every respect to Bank and its counsel.   Borrower assumes responsibility for the payment of all fees relative to the closing of the Loan, including, but not limited to, appraisal fees, surveys, all legal fees, inspection fees, commitment fees and all recording fees.

**DRAFT - FOR REVIEW &**
**DISCUSSION PURPOSES ONLY**

March _____, 2009
Page 6

## Exhibit A

## THE PROPERTY

**TO BE PROVIDED BY BORROWER WILL INCLUDE ALL ASSETS**

## 6 MONTH COST ANALYSIS

EXHIBIT

C

**SECURITY**                                                                 $90,000
 - $20.65 per hour x 2 guards x 24 hours = $991.20/day
hours cut down once on site manager arrives at Daufuskie

**ON SITE MANAGER**                                                          $72,000
$12,000 per month

**INSURANCE**                                                                $214,008
 - this includes all insurance past due from March, through
all renewals in August for property, wind, hail, liability
etc.  The only policy  not included would be workmans
comp because there are no employees

**MISC HOURLY WAGES FOR ACCOUNTING**                                         $14,400
 -this would be to maintain the computer equipment and do any
accounting work necessary for Trustee once budget put in place
20 hours per week x 30/hour

**PUBLIC RELATIONS**                                                         $18,000
 - ongoing communication campaign $150/hour - up to $3000/mo

**COLLATERAL PREPARATION**                                                   $45,000
 - prepare collateral piece to begin sale of assets

**DEEP CLEAN**                                                               $8,674
 - deep clean done on 4 kitchens on Daufuskie -
kitchens had to be cleaned up and shut down properly after owner
left property.
 ( see attached)

**CONSULTING FEE**                                                           $1,920
 - Rence Jones consulting fee to bring on site manager up to
date on what he was working on so he can move forward
$120/hour x 8 hours per week x 2 weeks

**RBC ENTERPRISES, INC.**                                                    $24,000
 - rate to assist trustee  $200/hr. avg.  20 hrs./mo

**TRUSTEE**
 - rate at $300//hr.  HOURS???

**GENERAL LANDSCAPING**                                                      $120,000
 - landscaping excluding golf course.  This is for the Inn, Clubhouse
Beach Club and some common areas.  Includes bringing pool at
Melrose up to code with DHEC

**GOLF COURSE LANDSCAPING**                                                  $330,000
 -landscaping to preserve asset only.  Not in playable condition

## 6 MONTH COST ANALYSIS

Based on proposals from CK Materials and The Greenery
Includes Bloody Point and Melrose

**SEA WALL EMERGENCY REPAIRS**                                           $50,000

**SUPPLIES**
- misc. supplies needed $500.mo plus postage $500/mo                     $6,000
to include overnight packages to attorneys, etc.

**TRAVEL**
- Travel for Trustee and others    AMOUNT???                             
this includes travel to and from court and attorneys meeting and
travel to and from Daufuskie.

**SALTY FARE LEASE**
in discussion with Kit Collins - owner

**UTILITIES**
unknown with current operations...

**TOTAL WITH INFORMATION CURRENTLY IN HAND**                             **$994,002**