UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | ) | |
|---|---|---|
| In re: | ) | Case No. 09-00389-jw |
| | ) | |
| Daufuskie Island Properties, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION AND MEMORANDUM OF THE TRUSTEE FOR INTERIM
AND FINAL ORDERS TO (I) AUTHORIZE SUPPLEMENTAL POST-PETITION
SECURED SUPERPRIORITY FINANCING PURSUANT TO BANKRUPTCY
CODE §§105(a),364(c)(1), 364(c)(2) AND 364(d), (II) GRANT A LIMITED
MODIFICATION OF THE AUTOMATIC STAY AND (III) SET FINAL HEARING
PURSUANT TO BANKRUPTCY RULE 4001**

___

Robert C. Onorato, as Trustee (the "Trustee") for the Chapter 11 bankruptcy estate (the "Estate") of Daufuskie Island Properties, LLC (the "Debtor"), hereby moves (the "Motion") for (i) authorization of supplemental post-petition secured superpriority financing pursuant to 11 U.S.C. §§ 105(a), 364(c)(1), 364(c)(2) and 364(d), (ii) the grant of a limited modification of the automatic stay, and (iii) the scheduling of the final hearing on the Motion. Because Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (hereinafter, the "Bankruptcy Rules") provides that a final hearing on the Motion cannot be held until fifteen days after service of notice of the Motion, the Trustee moves for an expedited preliminary hearing on the Motion, and entry of an interim order in substantially the form attached hereto as **Exhibit A** (the "Interim Order"). This supplemental post-petition financing is to be provided by Tidelands Bank in the amount of $500,000.00, as a supplement to post-petition financing already provided by Beach First National Bank ("Beach First"), and as part of a participation loan from Beach First and Tidelands Bank in the combined amount of $1.5 million.

In support of this Motion, the Trustee respectfully submits the following:

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b), and Local Civil Rule 83.IX.01, D.S.C.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory bases for the relief requested herein are sections 105(a), 363(c)(2), 363(e), 364(c)(1), 364(c)(2) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")[1], Bankruptcy Rule 4001 and SC LBR 4001-4 of this Court.

## PROCEDURAL HISTORY

1.   On or about January 20, 2009 (the "Petition Date"), the Debtor filed its petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq.). The Debtor operated as the debtor-in-possession until the Trustee's appointment in this case.

2.   On March 17, 2009, the Court entered its Order Granting Joint Motion for Appointment of Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, granting the joint motion of the Official Committee of Unsecured Creditors (the "Committee"), Beach First and AFG, LLC ("AFG") for the appointment of a trustee in this case.  Thereafter, on March 20, 2009, the Court entered its Order Approving Appointment of Trustee, approving the United States Trustee's appointment of Robert C. Onorato as Trustee for the Debtor's Chapter 11 estate.

3.   The Debtor's assets include, but are not limited to, real property located on Daufuskie Island with structures and improvements which include an inn (the "Melrose Inn"), cottages, duplexes, a beach club, two golf courses (the "Melrose Golf Course" and the "Bloody Point Golf Course"), tennis courts, a pool and other structures, improvements and fixtures (collectively, the "Assets").  The Debtor's real property is generally separated into real property contained in the Melrose Planned Unit Development (the "Melrose Real Property") and real

---

[1] References to sections of the Bankruptcy Code are hereinafter made by the referenced section number only.

2

property contained in the Bloody Point Planned Unit Development (the "Bloody Point Real Property").  The Melrose Golf Course, the Melrose Inn, the Melrose beach club and cottages are located on the Melrose Real Property.  The Bloody Point Golf Course, miscellaneous maintenance buildings and structures and unsold residential lots are located on the Bloody Point Real Property.

4.  The Trustee is informed and believes that the liens asserted by creditors against the Assets are predominantly asserted against the Melrose Real Property, and, other than (a) an outstanding mechanic's lien claim, (b) a mortgage held by Beach First on two lots in Bloody Point, and (c) the first priority lien granted to Beach First on the property to secure the post-petition financing it has provided under the Court's Orders entered on April 24, 2009 and on May 8, 2009, it appears that the Bloody Point Real Property is presently unencumbered.

5.  Beach First is a pre-petition creditor of the Debtor, and its pre-petition claim is secured by some of the Debtor's Assets, including two lots on the Bloody Point Real Property, cottages on the Melrose Real Property, and the beach club on the Melrose Real Property (the "Beach First Collateral").

6.  AFG is also a pre-petition creditor of the Debtor, and its claim is secured by some of the Debtor's Assets, including the Melrose Golf Course, the Melrose Inn, and certain other real property (the "AFG Collateral").

7.  The Melrose Club, Inc. ("MCI") is a former owner of approximately 300 acres of the Melrose Real Property, including the Melrose Golf Course, the Melrose Inn, the beach club, some cottages and other resort amenities (the former MCI property is hereinafter collectively referred to as the "Clouded Assets").  MCI asserts certain rights (which include reconveyance rights) in regard to the Clouded Assets.

8.  Carolina Shores, LLC ("Carolina Shores") is a pre-petition creditor of the Debtor that holds a mortgage on some of the Debtor's Assets (such Assets are hereinafter referred as the "Carolina Shores Collateral"). It is believed that Carolina Shores has a junior lien on the majority of its collateral, but it may hold a first lien on some Assets.

9.  William R. Dixon, Jr. ("Dixon") asserts a mortgage on some of the Debtor's Assets, but Dixon's claim as a secured creditor is disputed.

10. Coastal Connections, Inc. and The Greenery (the "Mechanic's Lien Holders") assert mechanic's liens on some of the Debtor's Assets.

11. At the time of the Trustee's appointment, the Estate lacked available cash with which to pay expenses necessary or appropriate to protect and properly maintain the Assets. The Estate had only approximately $15,000 of cash in its accounts, which funds were cash collateral of AFG due for payment to AFG pursuant to orders previously entered in the case. The Assets were at risk and would have depreciated without proper maintenance, which includes mowing grass, irrigating areas of the property, fertilizing and performing certain conditioning treatments on the golf courses, maintaining the structures and improvements on the property, and securing the Assets. In addition, the Trustee is informed and believes that the operation of certain of the amenities on the property, even if only on a limited basis, is necessary to preserve the value of the Assets.

12. Beach First agreed to make a post-petition loan to the Trustee in the amount of $1 million, subject to certain terms and conditions. The Trustee filed a motion for authorization of the post-petition financing and related provisions, and, upon notice and hearing, the Court authorized the post-petition financing. Specifically, on April 24, 2009, the Court entered the <u>Interim Order Approving Postpetition Secured Superpriority Financing, Granting Liens and</u>

4

Providing Superpriority Administrative Expense Status, and on May 8, 2009, the Court entered the Final Order (A) Approving Postpetition Secured Superpriority Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay on a Limited Basis (the "BF Final Order").  The BF Final Order entered on May 8, 2009, includes the provision that the BF Final Order could be supplemented by a supplemental Order increasing authorization for the post-petition financing to a maximum of $1.5 million, i.e., authorizing a loan of an additional $500,000.00.  See paragraph 31 on page 21 of the BF Final Order.

        13.      At the time of the authorization of the $1 million of post-petition financing from Beach First, it was understood by the Trustee, Beach First, AFG, the Committee, Carolina Shores and Dixon that the Trustee probably would need more than $1 million of funding to cover expenses for the expected period of time needed for a sale of the property of the Estate.  Hence, the BF Final Order includes the provision allowing for the possibility of $500,000.00 of supplemental financing.  The Trustee now needs additional funding to cover necessary and appropriate expenses of the Estate through the period set for a sale of the property of the Estate.

        14.      The Trustee sought a lender willing to make the supplemental $500,000.00 loan, on terms which would not disrupt the financing and secured and priority position of Beach First for its $1 million post-petition loan, as part of a participation loan with Beach First.  Tidelands Bank has agreed to loan the additional $500,000.00, on the same terms as the existing post-petition financing from Beach First, which supplemental loan will, in combination with the post-petition financing already provided by Beach First, constitute a participation loan by Beach First and Tidelands Bank in the combined amount of $1.5 million.  The Trustee is informed and believes that Beach First agrees to this loan arrangement.

15.     The Tidelands Bank loan (the "Supplemental Loan") is to be in the amount of $500,000.00, it will bear interest at the rate of ten percent (10.00%) per annum, and it will have a maturity date of November 1, 2009.  The Supplemental Loan will require payment of a $1,000.00 monthly administrative fee to Tidelands Bank, and an Exit Fee will be due to Tidelands Bank in the amount of four percent (4.00%) of the loan amount (i.e., $20,000.00) upon the Termination Date (which is stated hereinbelow on page 7, and will have the same meaning as in the Beach First post-petition loan documents).  The Supplemental Loan will be secured by a first priority lien on all assets of the Estate, co-equal in priority with the liens granted to Beach First for the $1 million post-petition loan under the BF Final Order, except for preference avoidance actions and recoveries from preference avoidance actions, which shall not be subject to the liens.  The Supplemental Loan shall also have superpriority administrative expense status.  The terms and provisions of Supplemental Loan and its documents shall be, in substance and in all material respects, the same as for the post-petition loan by Beach First under the BF Final Order.

## RELIEF REQUESTED

An immediate and critical need exists for the Trustee to obtain funds in order to preserve the Assets.  Accordingly, the Trustee seeks the entry of an Interim Order to (i) authorize the supplemental post-petition secured superiority financing to be provided by Tidelands Bank pursuant to §§ 105(a), 364(c)(1), 364(c)(2) and 364(d) pending a final hearing on the Motion, (ii) grant a limited modification of the automatic stay, and (iii) set the final hearing on the Motion pursuant to Bankruptcy Rule 4001.  Upon the final hearing on the Motion, the Trustee seeks entry of a Final Order on the Motion in substantially the form attached hereto as **Exhibit B** (the "Final Order").

In accordance with Bankruptcy Rule 4001 and SCBLR 4001-4, the essential terms of the Supplemental Loan by Tidelands Bank are described below[2].

Borrower.  Robert C. Onorato, as Trustee for the Chapter 11 bankruptcy estate of Daufuskie Island Properties, LLC

   a. Supplemental Post-Petition Lender.  Tidelands Bank

   b. Amount of Supplemental Loan.  $500,000.00.

   c. Closing Date.  Upon entry of the Interim Order (defined herein) and all conditions precedent to the loan have been met.

   d. Term. The loan shall terminate on the earliest of (such ending date, the "Termination Date"): (a) November 1, 2009, (b) the sale of substantially all of the Assets, (c) the conversion or dismissal of the Debtor's bankruptcy case; (d) an event of default under the Supplemental Loan.

   e. Budget. The Trustee's borrowings, disbursements and expenditures shall be limited, subject to certain variances, as set forth in a budget (the "Budget") prepared by the Trustee and approved by Tidelands Bank and Beach First. A copy of the proposed Budget is attached hereto as **Exhibit C**. The Budget shall be updated by the Trustee (with the reasonable consent and/or at the request of Tidelands Bank and/or Beach First) from time to time, and the Trustee shall provide a report to Tidelands Bank and Beach First not less than on a monthly basis (with delivery to Tidelands Bank and Beach First on or before the 15th day of each month) showing the actual expenditures during the calendar month compared with budgeted and anticipated expenses for that same month. The budget shall not be materially modified unless the modification is made with the

---

[2] To the extent anything in this Motion is inconsistent with the proposed Interim Order, the proposed Interim Order shall control.

7

consents of Tidelands Bank, Beach First and the Committee, or by Order of the Court; provided, however, that the Trustee shall not be required to make expenditures allowed under the budget if he determines that such expenditures are not beneficial or in the best interest of the bankruptcy estate.

f.  Use of Financing. The loan shall be used solely for (i) working capital to the extent set forth in the Budget, subject to certain variances, (ii) costs of administration of the Chapter 11 case to the extent set forth in the Budget (as defined above), and (iii) certain fees and expenses of Tidelands Bank.

g.  Collateral. Subject to permitted encumbrances approved by Tidelands Bank and Beach First in their sole discretion, the indebtedness to Tidelands Bank for the Supplemental Loan and all interest, fees and expenses related thereto (a) will be entitled to super priority claim status pursuant to §364(c)(1), and (b) will be secured by (i) a perfected security interest (the "Tidelands Post-Petition Lien") pursuant to §§364(c)(2)and 364(d) (the liens securing the Supplemental Loan shall be co-equal to the priority of the liens securing the post-petition loan made by Beach First under the BF Final Order, but senior to all liens securing any prepetition debt) in all of the Assets of the Debtor, including all real and personal property, whether now existing or hereafter arising (the "Post-Petition Collateral") subject to the Interim Order and the Final Order; provided, however, that notwithstanding the foregoing language, the Tidelands Post-Petition Lien shall not include avoidance actions and recoveries from avoidance actions.  In addition, Tidelands Bank will have the right to utilize, at no cost or expense, any tradenames, trademarks, copyrights or other intellectual property to the extent

8

necessary or appropriate in order to sell, lease or otherwise dispose of any of Post-Petition Collateral. The Tidelands Post-Petition Liens shall be first priority liens, co-equal in priority with the liens securing the Beach First post-petition loan under the BF Final Order but senior in priority to all other liens or security interests.

The term "Post-Petition Collateral" shall include, subject to the entry of a Final Order upon this Motion, the Trustee's rights under §506(c) and the proceeds thereof.

Default Rights. Upon default under the Supplemental Loan, or the Termination Date, or as otherwise provided in the Supplemental Loan documents, Tidelands Bank may foreclose on any of the Assets to recover the Supplemental Loan. Prior to proceeding with a foreclosure action or any other state law remedies, Tidelands Bank acknowledges that it must file and serve on all interested parties a motion for relief from stay pursuant to §362(d).

The Trustee requests entry of the proposed Interim Order and for authority to borrow funds from Tidelands Bank as requested herein. The Trustee requests that, as part of the relief granted, the Court order that the stay under Bankruptcy Rule 6004(g) is not applicable to the provisions of the Interim Order.

Thereafter, upon notice to parties entitled to notice, the Trustee requests that the Court conduct the final hearing on the Motion pursuant to Bankruptcy Rule 4001, and enter a final order in substantially the form of **Exhibit B** with only such conforming changes as reflecting the entry and provisions of the Interim Order and the applicable portions of the Budget (the "Final Order").

**BASIS FOR RELIEF REQUESTED**

Bankruptcy Code §364 provides, in pertinent part, as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. §§ 364(c) and (d).

As discussed above, the Trustee sought to obtain new secured credit from potential lenders to supplement the post-petition loan made by Beach First under the BF Final Order, upon terms consistent with the Beach First post-petition loan. A supplemental loan in the amount provided by Tidelands Bank, and upon terms consistent with the Beach First post-petition loan, is unavailable to the Trustee without granting liens pursuant to §§ 364(c)(1) and (2) and §364(d). Therefore, the granting of liens under §§ 364(c) and (d) to secure the Supplemental Loan is necessary and appropriate in this case.

As a provision for the Supplemental Loan, the pre-petition lenders and MCI are entitled pursuant to §361 to adequate protection of their interests in the property securing the Supplemental Loan. In this case, the pre-petition secured lenders and MCI are adequately protected against any diminution in value in their respective interests in the Assets resulting from

the imposition of the Tidelands Post-Petition Liens by the use of the loan proceeds to preserve and maintain the Assets and the equity in the Assets. The proposed Interim Order, if approved, will provide the prepetition lenders with adequate protection while allowing the Trustee an opportunity to market the Assets for sale.

The Supplemental Loan has been negotiated in good faith and at arm's length between the Trustee, on the one hand, and Tidelands Bank, on the other hand, and the Trustee and Tidelands Bank have each been represented by separate counsel in this matter. Any loan extended and other financial accommodations made to the Trustee by Tidelands Bank will be extended by Tidelands Bank in good faith, as that term is used in § 364(e). Thus, Tidelands Bank is entitled to protection as a good faith lender under § 364(e).

The relief requested herein contemplates a limited modification of the automatic stay (to the extent applicable) only to the extent to permit the Trustee to (i) grant the security interests, liens, and super- priority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) permit Tidelands Bank to file all documents necessary to provide notice of the Tidelands Post-Petition Lien; and (iii) implement the terms of the proposed Orders. Notwithstanding the limited modifications set forth herein, the automatic stay otherwise remains in full force and effect. Tidelands Bank shall file a motion for relief from the stay in the event it seeks to enforce its secured rights upon a default under the terms of the Supplemental Loan.

Stay modifications of this kind are ordinary and standard features of post-petition financing facilities and, in the Trustee's business judgment, are reasonable and fair under the present circumstances.

WHEREFORE, the Trustee respectfully requests that the Court enter an interim order, in substantially the form attached hereto as **Exhibit A**, to (i) authorize postpetition secured superiority financing pursuant to Bankruptcy Code §§ 105(a), 364(c)(1), 364(c)(2) and 364(d), (ii) grant a limited modification of the automatic stay, (iii) set the final hearing on the Motion pursuant to Bankruptcy Rule 4001, (iv) upon the final hearing on the Motion, enter a final order on the Motion in substantially the form attached hereto as **Exhibit B** and (v) grant such other and further relief as may be appropriate.

/s/ Julio E. Mendoza, Jr.
Julio E. Mendoza, Jr. (Fed ID No. 3365)
Suzanne Taylor Graham Grigg (Fed ID No. 8064)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, South Carolina 29202
803-540-2026
803-727-1478
rmendoza@nexsenpruet.com
sgrigg@nexsenpruet.com

Attorneys for Robert C. Onorato, Trustee for the Chapter 11 Estate of Daufuskie Island Properties, LLC, a/k/a Daufuskie Island Resort & Breathe Spa

July 10, 2009
Columbia, South Carolina