**FILED**
at ____O'clock & ____min ____M

**ENTERED**
SEP 2 4 2009
K.R.W.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

SEP 2 4 2009

United States Bankruptcy Court
Columbia, South Carolina (26)

| In re:                                                                 | Case No. 09-00389-jw |
|------------------------------------------------------------------------|----------------------|
| Daufuskie Island Properties, LLC a/k/a Daufuskie Island Resort & Breathe Spa, | Chapter 11           |
| Debtor.                                                                |                      |

**ORDER (1) ESTABLISHING BIDDING AND OTHER PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE, (2) GRANTING PROTECTIONS TO THE PROPOSED BUYER, AND (3) SCHEDULING HEARING ON THE SALE**

This matter came before the Court upon the motion of Robert C. Onorato, Trustee (the "Trustee") for the Chapter 11 bankruptcy estate (the "Estate") of Daufuskie Island Properties, LLC (the "Debtor"), made pursuant to 11 U.S.C. §§ 105(a) and 363(b) and (f), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bidding Procedures Motion"), filed on September 15, 2009 seeking entry of an Order (1) establishing bidding and other procedures in connection with the sale of substantially all assets of Estate, (2) granting protections to the proposed buyer of the assets, and (3) scheduling the hearing on such sale. The Bidding Procedures Motion is filed in conjunction with the Trustee's <u>Motion and Memorandum for an Order (1) Authorizing the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases</u> (the "Sale Motion"), also filed on September 15, 2009.

The Estate owns substantial resort and development property on Daufuskie Island in Beaufort County, South Carolina. The Sale Motion seeks authorization for the sale of the property and related assets (collectively, the "Assets") to Montauk Resorts, LLC or its assigns

(the "Buyer") for the cash price of $49.5 million pursuant to the terms of an Asset Purchase Agreement (the "APA") executed by the Buyer and the Trustee, upon the provision that the sale shall be made free and clear of all liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. §§ 363(b)(1) and (f), except for Assumed Liabilities and Permitted Encumbrances (both as defined in the APA).

In the Sale Motion, the Trustee provides that the sale of the Assets is subject to higher or otherwise better offers. The Bidding Procedures Motion seeks to establish a defined procedure under which other potential buyers may submit competing bids for the Assets, and to establish provisions which will govern the bidding process. In addition, in the Bidding Procedures Motion, the Trustee seeks to establish certain protections for the Buyer as the initial bidder for the Assets (the "Stalking Horse Bidder", and its offer the "Stalking Horse Bid"), which are conditions of the Stalking Horse Bid.

It appears that the proposed bidding procedures in the Motion are commercially reasonable, will facilitate the sale process and are likely to maximize the value of the assets for the Estate. It further appears that the Stalking Horse Bidder protections, which would (a) reimburse the Buyer if it is not the winning bidder and purchaser of the Assets (and provided it has not withdrawn its bid or defaulted under the APA) for costs it has incurred in making its offer to purchase the assets, and (b) reward it for the benefit to the Estate that the Stalking Horse Bid created in attracting other bids greater in amount than the Stalking Horse Bid. The Court finds that the relief requested in the Bidding Procedures Motion is in the best interest of the estate.

Therefore, it is hereby ORDERED, ADJUDGED AND DECREED that the following bidding procedures and bid protection are approved and established:

1. Any bid from any persons or entity other than the Buyer to purchase the Assets, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall: (a) be in writing; (b) contain terms and conditions that are substantially similar in all material respects to the APA, other than the identity of the buyer and the amount of the purchase price; (c) be accompanied by a blackline (or redline) version of the bidder's proposed asset purchase agreement showing how it differs from the APA; (d) be accompanied by a written acknowledgement and agreement that the terms of the bid are substantially similar in all material respects to the APA, except for the identity of the bidder and the purchase price, and that the bidder, if it is declared the winning bidder, will enter into an asset purchase agreement with the Trustee confirming the terms of such winning bid; (e) exceed the purchase price stated in the APA by at least Six Hundred Thousand Dollars ($600,000.00); (f) include evidence reasonably satisfactory to the Trustee of the financial ability of the Qualified Competing Bidder to consummate the purchase for cash or obtain financing without a contingency in its offer; (g) include a deposit of Two Hundred Fifty Thousand and no/100 ($250,000) in certified funds payable to the trust account of counsel for the Trustee; and (h) **be received by the Trustee no later than the close of business on October 21, 2009**. Upon receipt, the Trustee shall promptly deliver copies of any competing bids to the Buyer, the secured creditors, the Committee, the United States Trustee and any known interested parties. No bid shall be considered by the Trustee or the Court unless it is a Qualified Competing Bid and no bidder shall be permitted to participate in the auction process unless it is a Qualified Competing Bidder. The Trustee, the Committee, Beach First, AFG, Carolina Shores, LLC, the United States Trustee, and the Buyer reserve the right to object to any bid being deemed a "Qualified Competing Bid".

2. In the event the Trustee receives one or more Qualified Competing Bids, the Trustee shall conduct an **auction (the "Auction")** for the sale of the Assets at the Sale Hearing (defined in paragraph 4 below). Only the Buyer and parties who submit Qualified Competing Bids in compliance with the provisions of paragraph 1 above shall be permitted to participate in the Auction. The bidding at the Auction shall proceed as provided in paragraph 3 below.

3. Upon receipt of any Qualifying Competing Bid as described in paragraph 1 above, the Buyer shall have the unconditional right to submit an overbid (i.e., increase the Buyer's offer to an amount greater than the then highest Qualified Competing Bid) by delivering to the Trustee no later than the beginning of the Auction scheduled at 10:00 a.m. on October 28, 2009, two signed copies of an amendment to the APA in which the purchase price set forth therein exceeds the purchase price of the then highest Qualified Competing Bid pursuant to paragraph 1 above by a minimum of One Hundred Thousand Dollars ($100,000.00). If a Qualified Competing Bid is received, each Qualified Competing Bidder also shall have the right to increase their bids at the Auction in the same manner as the Buyer. However, any higher bid of the Buyer or of Qualified Competing Bidders shall be subject to the Trustee's acceptance of a still higher and better bid submitted during the Auction in compliance with this paragraph; provided, however, that such higher and better bid must equal or exceed the sum of: (i) the purchase price under the amended APA and the then highest Qualified Competing Bid; plus (ii) an additional amount of at least One Hundred Thousand and 00/100 Dollars ($100,000.00) (a "Yet Higher Offer"). In the event of a Yet Higher Offer, the process set forth in the immediately preceding sentence shall continue, with the Buyer and each Qualified Competing Bidder having the continuing right to submit an overbid for a reasonable period of time, until neither the Buyer nor any Qualified Competing Bidder makes a further overbid. The highest or otherwise best

offer at the Auction shall be deemed the winning bid (the "Winning Bid", made by the "Winning Bidder").

4. The Court will conduct a hearing on the Sale Motion (the "Sale Hearing") on **October 28, 2009, at 10:00 a.m.**, or as soon after as the matter may be heard, in the courtroom of the **Beaufort Federal Courthouse located at 1501 Bay Street, Beaufort, South Carolina**. Upon completion of the Auction (if applicable as provided in paragraph 3 above), the Trustee will request that he be authorized to proceed with the sale of the Assets to the Winning Bidder, as determined at the Auction. As set forth in paragraph 6 below, the Trustee may also seek authorization to make the sale to a "back-up" bidder in the event the Winning Bidder at the Auction does not consummate the purchase of the Assets.

5. In the event that any person or entity acquires the Assets other than due to (i) a breach of the APA by the Buyer, (ii) the Buyer's termination of the APA prior to the end of the Due Diligence Period as allowed in Section 7.3 of the APA, or (iii) the Melrose Assets being acquired by The Melrose Club, Inc. ("MCI") pursuant to rights it asserts exist under that certain Transfer Agreement dated on or about December 26, 1996 (the "1996 Transfer Agreement"), the Buyer shall be entitled to an administrative claim in this case as reimbursement of the Buyer's expenses incurred in connection with the sale, and as compensation for serving as the Stalking Horse Bidder, in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "Due Diligence Reimbursement Fee"). This Due Diligence Reimbursement Fee shall serve as reimbursement for the Buyer's reasonable expenses incurred in entering into the APA (including expenses incurred in a due diligence review of the Assets), and for the benefit to the estate that the APA created, as the Stalking Horse Bid, in attracting other bids over and above the Purchase Price, which benefit the Trustee acknowledges.

6. In the event that a Qualified Competing Bid is received, the Trustee will request that the Court approve a "back-up" bid (the "Back-up Bid", and the "Back-up Bidder"). If the Winning Bidder is unable to close the sale within the time required for the closing by the asset purchase agreement, the Winning Bidder shall forfeit its deposit made pursuant to paragraph 1(g) above, and the Trustee shall close the sale of the Assets to the Back-Up Bidder without the necessity of obtaining another order from this Court. No Qualified Competing Bidder whose Bid is not deemed to be the successful bid at the conclusion of the Auction shall be required to act as a Back-Up Bidder; however, unless and until the unsuccessful Qualified Competing Bidder notifies the Trustee of its unwillingness to be a Back-Up Bidder, the Trustee may hold the deposit until the deposit is due for return under paragraph 7 below.

7. The deposit made by any Qualified Competing Bidder, pursuant to paragraph 1(g) above, who is not either the Winning Bidder or the Back-Up Bidder, shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Hearing. The deposit made by any Qualified Competing Bidder that is designated as a Back-Up Bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the closing of the sale of the Assets to the Winning Bidder.

8. Acceptance by the Trustee of a Qualified Competing Bid as a Winning Bid or a Back-Up Bid shall, in all respects, be subject to the entry of the sale order by the Court authorizing the Trustee to consummate the sale.

NPCOL1:1792510.3-PG-(JEM) 045057-00001

9. If a Qualified Competing Bid is accepted by the Trustee as the Winning Bid or Back-Up Bid, the Qualified Competing Bid shall remain open and irrevocable through closing of the sale of the Assets.

10. Any dispute regarding any aspect of the foregoing bidding procedures shall be resolved by the Court.

11. The provisions of this Order will control in the event that there is any discrepancy between the provisions of this Order and the APA.

12. The provisions of this Order are without prejudice to the rights of any creditor or party in interest to object to the sale of the Assets.

13. In the event that the Buyer does not comply with the requirements of the APA, but a Qualified Competing Bidder submits an offer substantially similar to the APA, then the Qualified Competing Bidder may be substituted as the Stalking Horse Bidder and these approved bidding procedures and bid protections shall apply with respect to the substituted Statlking Horse Bidder.

14. This Order may be amended by the Court at any time prior to the conclusion of the Sale Hearing upon a finding that its terms are not in the best interest of the Estate.

IT IS FURTHER ORDERED that the provisions of this Order are without prejudice to MCI's asserted rights and interest under the 1996 Transfer Agreement.

IT IS FURTHER ORDERED that the Sale Hearing on the Sale Motion is scheduled for **October 28, 2009, at 10:00 a.m. in the courtroom of the Beaufort Federal Courthouse located at 1501 Bay Street, Beaufort, South Carolina 29902.**

AND IT IS SO ORDERED

# # # # #

_____  9/24/09
John E. Waites                    Date
U.S. Bankruptcy Court Judge
District of South Carolina