**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 09-00389-JW |
| | Chapter 11 |
| DAUFUSKIE ISLAND PROPERTIES, LLC, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the Motion and Memorandum of Law to Vacate, or in the Alternative, to Alter or Amend ("Motion") the Order (1) Authorizing Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases ("Sale Order") filed by the Melrose Club, Inc. ("MCI"). Objections were filed by the Official Committee of Unsecured Creditors (the "Committee"), Beach First National Bancshares, Inc. ("Beach First"), AFG, LLC ("AFG"), Carolina Shores, LLC ("Carolina Shores"), and Robert C. Onorato as Trustee for the Chapter 11 bankruptcy estate of the Debtor ("the Trustee").

**A. Applicable Law**

The Fourth Circuit has recognized three grounds for granting a motion to alter or amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Id. (internal citation omitted). Rule 59(e), Fed. R. Civ. P., "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of

1

judgment." Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n.5 (2008) (internal citation omitted). "Mere disagreement does not support a Rule 59(e) motion." U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (internal citation omitted); see also Martin v. Lott, C/A No. 3:07-3782-JFA, slip op., 2010 WL 679005, at *1 (D.S.C. Feb. 23, 2010) (denying a motion to reconsider on the basis of a clear error of law, finding that the motion sought to "relitigate matters previously decided by the court and appear[ed] to be based largely on [the] displeasure with the court's prior ruling").

### B. Review of the Sale Order

In the Sale Order, the Court considered the Trustee's motion for authorization of a pre-confirmation sale pursuant to 11 U.S.C. § 363(b)(1), as a sale not made in the ordinary course of Debtor's business, and pursuant to 11 U.S.C. § 363(f), as a conveyance free and clear of all liens, claims, encumbrances, and other interests. The Court concluded that the Trustee satisfied the "sound business purpose" test prescribed by § 363(b)(1) and In re Taylor, 198 B.R. 142, 156-57 (Bankr. D.S.C. 1996), and that the proposed sale to Montauk Resorts, LLC ("Montauk") was in the best interests of the estate, creditors, and other parties in interest.

The Court further concluded the Trustee was authorized to sell the assets free and clear of certain interests pursuant to § 363(f).[1] The Sale Order noted that authorization for the sale free and clear of the interests of lienholders and other interests other than MCI was appropriate under

---

[1] Section 363(f) provides:
> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

2

§ 363(f)(2)-(4). With respect to MCI's asserted interest, the Sale Order found that the reconveyance covenant in favor of MCI was an "interest" subject to the provisions of § 363(f), and that authorization for a free and clear sale was warranted under § 363(f)(1) and (4).

In finding that the proposed sale was authorized under § 363(f)(1), the Sale Order determined that the relationship between Articles 14 and 3, which provide MCI members with rights regarding the use of the club and facilities, and Article 5 is significant because the rights to use the club memberships would not carry forward in the future if the assets deteriorated, wasted, or were sold,[2] and the remaining obligation under Article 5 to fund operational deficits does not meet its purpose for MCI's members if their membership benefits would cease to exist. The Sale Order further reasoned that the reconveyance right in Article 5 has not been triggered and is unlikely to be triggered in the future.

The Sale Order noted that the South Carolina doctrine of changed conditions or changed circumstances is a strict doctrine, but found that the circumstances of the instant matter meet these requirements. Allowing the covenant to continue to block any proposed sales or refinancing and lead to the closing of all operations and maintenance of the property has and will likely continue to result in the deterioration of the property and facilities and substantial loss in value to homeowners, creditors, and the community. Thus, the goal of the remaining obligation in Article 5 to preserve the condition, quality, and value of the property would be defeated.

The Sale Order found authorization for the sale was also appropriate pursuant to § 363(f)(4) on the basis of a bona fide dispute as to the validity and effect of MCI's asserted interest. The Court concluded there were significant issues in dispute between the parties pertaining to MCI's asserted interest, the validity of which was not determined in the December

---

[2] In this regard, the Court makes no determination that MCI members are or are not entitled to a claim for any loss of benefits.

3

21, 2009 summary judgment order ("Summary Judgment Order") in The Melrose Club, Inc. v. Onorato (In re Daufuskie), C/A No. 09-00389, Adv. Pro. No. 09-80094 (the "related adversary"), and which interest is still the subject of a continuing trial process.  At the time of the sale hearing and Sale Order, the Summary Judgment Order was appealable and subject to a motion to alter or amend, which offered a further indication that MCI's asserted interest remained in dispute.  Furthermore, the Sale Order found the effect of various provisions of the Transfer Agreement, whether Article 14 had been breached, and the priority of rights among the parties were issues of bona fide dispute.  The Sale Order also noted the filing of a lis pendens of public record by MCI in connection with the related adversary proceeding indicated that serious issues regarding the validity and effectiveness of the reconveyance right were in bona fide dispute.

### C. Analysis

MCI now argues that to the extent the Court found the proposed January 15, 2010 sale to Montauk to be a compelling reason to grant the Trustee's sale motion, such rationale needs to be reconsidered since at the time of the hearing on the Motion, there was little remaining prospect for the closing of the sale to Montauk.  MCI also asserts that the Court has mischaracterized MCI members and Daufuskie Island Club members' respective interests, and that the Sale Order incorrectly expanded South Carolina's doctrine of changed conditions or changed circumstances.  Furthermore, MCI argues that no bona fide dispute exists as to the dependence of the reconveyance covenant on Articles 14 and 3 of the Transfer Agreement, and that any issue of priority among the parties does not present such a dispute that would authorize a sale free and clear of the reconveyance covenant.

After considering the arguments made in MCI's Motion and at the hearing, the Court finds that MCI has failed to demonstrate that amendment to the Sale Order is warranted.

### a. Section 363(b)(1)

The Court agrees with the objecting parties that based on the record at the time of the Trustee's sale motion, the Sale Order properly concluded that the Trustee demonstrated a sound business reason for authorization of the sale under § 363(b)(1). The compelling business reason articulated by the Sale Order was that a sale of the assets was necessary as soon as reasonably possible to maximize and preserve the value of the assets and avoid significant loss in light of the Trustee's exhaustion of funds to maintain and protect the property. Despite the Trustee's acknowledgment that the proposed sale to Montauk was not certain at the time of the Motion hearing, the necessity to sell the assets as soon as possible was a sufficient business reason to authorize the proposed sale at that time. Furthermore, that reason remains applicable currently regardless of the status of the proposed sale to Montauk. Accordingly, MCI has not shown that an amendment to the Sale Order is appropriate on these grounds

### b. Section 363(f)(1)

MCI's argument that the Sale Order fails to recognize MCI's reconveyance right and assumes that MCI's Article 5 rights are dependent upon Articles 14 and 3 is erroneous. In the Summary Judgment Order, the Court concluded that the reconveyance right in Article 5 is a covenant running with the land, but that no trigger of that right had occurred. While recognizing that MCI's right to exercise that covenant may be extremely remote, the Court nevertheless acknowledged that Article 5 provided MCI with an ongoing right of reconveyance upon its trigger.

Furthermore, the Sale Order did not find that the Article 5 rights are dependent upon those in Articles 14 and 3; rather, the order interpreted the language and discerned the effect and value of Article 5 in the context of its relationship to other provisions within the Transfer

Agreement. While Article 5 may provide MCI with a different remedy under specific circumstances for the failure to fund operational deficits, that provision cannot be removed from its relationship to the remainder of the agreement between the parties. The language used in Sections 5.1 and 14.1.4 is consistent with one another insofar as each provision imposes obligations on the "Purchaser" (Debtor) for the benefit of the property and the "Seller" (MCI), and it is proper to read those Articles in the context of their common goal and purpose.[3]

Despite MCI's assertion that the interests of MCI members and the New Club members should be distinguished, the plain language of the Transfer Agreement indicates that a material benefit to the Seller, or MCI, included the operation of the New Club, the maintenance of the assets, a limit on assessments, and the continuation of club memberships. Furthermore, it has been consistently represented to the Court that MCI's interests are founded upon the protections of the amenities and maintaining the value of the property.

Regardless of whether all MCI members became members of the New Club or not,[4] the language of the Transfer Agreement indicates that MCI's interest in the funding of operational deficits – whether that obligation arises from Article 14 or Article 5 – would be to preserve the amenities and membership benefits described in Articles 14 and 3. The Court concluded that the interests and goals reflected in Articles 14 and 3 would be defeated upon the shutdown of the property and facilities because unlike Article 5, the obligations of Articles 14 and 3 are not covenants running with the title to the property. Thus, the Sale Order properly decided that the economic demise of the property and amenities would effectively render the remaining

---

[3] As discussed many times by the parties and in the Court's orders, the remaining "additional obligation" under Section 5.1 is the funding of operational deficits. Section 14.1.4 sets forth a list of obligations on the Purchaser and employs parallel language with respect to the obligation to fund all operational deficits generated by the Purchaser. This obligation is generally stated and not confined to the operation of the New Club, and thus, MCI is not left without a remedy for a failure to fund operational deficits.

[4] This is a new assertion by MCI that is not adequately addressed in or substantiated by the evidence.

6

obligation in Article 5 of little value,[5] and consequently, the reconveyance covenant oppressive.

Based on this analysis and the evidence before the Court, at the time of the hearing on the Trustee's motion to sell, it was reasonable for the Sale Order to conclude that an application of the South Carolina doctrine of changed conditions was appropriate. Despite MCI's assertion at the hearing on the Motion that there has been no evidence offered as to a sufficient change in the condition of the property, it has been uniformly presented to the Court and accepted by the parties throughout this case that the property and the Debtor's ability to generate funds to operate the amenities have been crippled by the present poor economic circumstances. As the parties opposing MCI's Motion correctly pointed out, the application of changed conditions is not based on the current economic climate alone, but instead, how the depressed economic climate has had a drastic physical impact on the amenities, facilities, access to the property, and surrounding community, and the parties' interests thereto, and how the shadow of the restriction of MCI has rendered the property virtually unmarketable and eliminated new financing. Based upon these reasons, MCI has failed to show that an amendment is necessary to correct a clear error of law or manifest injustice; rather, MCI appears to merely disagree with the Court's application of law, which is not a sufficient basis for a Rule 59(e) motion.

   c. **Section 363(f)(4)**

The Court also concludes that MCI has failed to show the Sale Order's finding as to § 363(b)(4) should be amended. The validity of MCI's reconveyance covenant, the effect and possible breach of provisions of the Transfer Agreement, and the priority of rights among the parties were strongly contested at the time of the hearing on the sale motion. Furthermore, these issues remain contested, which is evident by the numerous continuing motions for summary

---

[5] As stated, it appears to the Court that the likelihood of MCI's interest in the remaining obligation of Article 5 being triggered is so remote that it has little real value, but instead, is being used as leverage.

7

judgment and objections recently filed by the parties in the related adversary and the ongoing issues associated with the trial process. MCI's assertion that no bona fide dispute exists as to these issues is unsupported by the record and the ongoing litigation in this case.

Based on the foregoing analysis, the Court finds that MCI has not set forth a convincing argument to show that the Sale Order was premised on a clear error of law or resulted in manifest injustice, or that an amendment to the Sale Order is appropriate on any other basis. Therefore, the Motion is denied.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
April 30, 2010

**FILED BY THE COURT**
**04/30/2010**



Entered: 05/03/2010

*John E Waites*

Chief US Bankruptcy Court Judge
District of South Carolina