UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-00389-jw |
| | ) | |
| Daufuskie Island Properties, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION AND MEMORANDUM OF THE TRUSTEE FOR INTERIM
AND FINAL ORDERS TO (I) AUTHORIZE A POST-PETITION
SECURED AND SUPERPRIORITY LOAN FROM ZC INVESTMENTS, LLC
PURSUANT TO BANKRUPTCY CODE §§105(a), 364(c)(1), AND 364(d), (II) GRANT A
LIMITED MODIFICATION OF THE AUTOMATIC STAY, AND (III) SET FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001**

___

Robert C. Onorato, as Trustee (the "Trustee") for the Chapter 11 bankruptcy estate (the "Estate") of Daufuskie Island Properties, LLC (the "Debtor"), hereby moves (the "Motion") for (i) authorization of a post-petition secured and superpriority loan from ZC Investments, LLC, a limited liability company organized under the laws of Indiana ("ZC Investments"), in the principal amount of $250,000.00 (the "ZC Super-Senior Post-Petition Loan") pursuant to 11 U.S.C. §§ 105(a), 364(c)(1), and 364(d); (ii) the grant of a limited modification of the automatic stay; and (iii) the scheduling of the final hearing on the Motion.  The liens securing this ZC Super-Senior Post-Petition Loan shall be senior in priority to the liens granted to secure the superpriority post-petition loans previously made by Beach First National Bank ("Beach First") and Tidelands Bank to the Estate under the Court's Orders entered on April 24, 2009, May 8, 2009, July 17, 2009, July 29, 2009, November 23, 2009, and December 8, 2009 (such loans comprising a participation loan between Beach First and Tidelands Bank in the total principal amount of $1.5 million and an additional loan from Tidelands Bank in the amount of $250,000 and collectively hereafter referred to herein as the "Senior Post-Petition Loans").  The Trustee is

informed and believes that Beach First and Tidelands Bank have agreed, and the proposed orders accompanying this Motion provide, that the Senior Post-Petition Loans shall be junior in priority and subordinate to the superpriority status granted to ZC Investments for the ZC Super-Senior Post-Petition Loan.

Because Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (hereinafter, the "Bankruptcy Rules") provides that a final hearing on the Motion cannot be held until fifteen days after service of notice of the Motion, the Trustee moves for an expedited preliminary hearing on the Motion, and entry of an interim order in substantially the form attached hereto as **Exhibit A** (the "Interim Order").

In support of this Motion, the Trustee respectfully submits the following:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b), and Local Civil Rule 83.IX.01, D.S.C. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363(c)(2), 363(e), 364(c)(1), and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")[1], Bankruptcy Rule 4001, and SC LBR 4001-4 of this Court.

## PROCEDURAL HISTORY

3. On January 20, 2009 (the "Petition Date"), the Debtor filed its petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq.). The Debtor operated as the debtor-in-possession until the Trustee's appointment in this case.

---

[1] References to sections of the Bankruptcy Code are hereinafter made by the referenced section number only.

2

4.      On March 17, 2009, the Court entered its <u>Order Granting Joint Motion for Appointment of Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104</u>, granting the joint motion of the Official Committee of Unsecured Creditors (the "Committee"), Beach First, and AFG, LLC ("AFG") for the appointment of a trustee in this case. Thereafter, on March 20, 2009, the Court entered its <u>Order Approving Appointment of Trustee</u>, approving the United States Trustee's appointment of Robert C. Onorato as Trustee for the Debtor's Chapter 11 estate.

**General Description of the Assets of the Estate**

5.      The Debtor's real property is generally separated into real property located on Daufuskie Island and contained in the Melrose Planned Unit Development (the "Melrose Property"); real property contained in the Bloody Point Planned Unit Development ("Bloody Point" or the "Bloody Point Property"); and the real property and improvements comprising Melrose Landing, the dock and landing/departure location owned by the Estate. Specifically, the Debtor's assets include, but are not limited to, structures and improvements which include an inn (the "Melrose Inn"), a conference center (the "Island House Conference Center"), cottages and duplexes (the "Beach Cottages"), a beach club (the "Melrose Beach Club"), two golf courses (the "Melrose Golf Course" and the "Bloody Point Golf Course"), an equestrian center, tennis courts, a pool, and other structures, improvements and fixtures (collectively, the "Assets"). The Melrose Golf Course, the Melrose Inn, the Melrose Beach Club, and the Beach Cottages are located on the Melrose Property. The Bloody Point Golf Course, miscellaneous maintenance buildings and structures, and unsold residential lots are located on the Bloody Point Property.

6.      In addition, the Estate owned 199.28 acres of undeveloped land on the southern end of Daufuskie Island, adjacent to the Bloody Point Property, on Mungen Creek (the "Eigelberger Tract"). The Estate owned the Eigelberger Tract by and through the Estate's

ownership of Eprop, LLC, which held title to the Eigelberger Tract. However, the Eigelberger Tract was sold at a foreclosure sale on April 5, 2010.

### Existing Liens on the Assets of the Estate

7. Pursuant to the Orders entered on April 24, 2009, May 8, 2009, July 17, 2009, and July 29, 2009, the Court granted the Trustee's motions for authorization to obtain post-petition financing from Beach First in the principal amount of $1 million and from Tidelands Bank in the principal amount of $500,000.00, such loans comprising a participation loan by these two lenders, secured by a senior mortgage on, security interest in, and lien on all Assets of the Estate (except for recoveries from avoidance actions), and having superpriority status under 11 U.S.C. § 364(c)(1) (except as to avoidance actions and recoveries from avoidance actions) (the "Initial Senior Post-Petition Loans").

8. Pursuant to the Orders entered on November 23, 2009 and December 8, 2009, the Court granted the Trustee's motions for authorization to obtain additional post-petition financing from Tidelands Bank in the principal amount of $250,000.00 (the "Second TB Post-Petition Loan"), secured by a mortgage on, security interest in, and lien on all Assets of the Estate (except for recoveries from avoidance actions), and having superpriority status under 11 U.S.C. § 364(c)(1) (except as to avoidance actions and recoveries from avoidance actions); provided, however, that the superpriority claim of the Second TB Post-Petition Loan is subordinate to the superpriority claims previously granted to the Initial Senior Post-Petition Loans but senior in priority to all other liens and interests in the assets of the Estate, including the asserted interests of Melrose Club, Inc. ("MCI") (as discussed in more detail hereinbelow). The Initial Senior Post-Petition Loans and the Second TB Post-Petition Loan are collectively referred to herein as the "Senior Post-Petition Loans."

4

9. Other than the Senior Post-Petition Loans (which are secured by all Assets of the Estate except for avoidance actions and recoveries from avoidance actions), the Trustee is informed and believes that the liens asserted by creditors against the Assets are predominantly asserted against the Melrose Property, and, other than an outstanding mechanic's lien claim, a mortgage held by Beach First on two lots in Bloody Point as part of its collateral for a pre-petition loan it made to the Debtor.

10. In addition to being owed for the Initial Senior Post-Petition Loan it made in this case, Beach First also holds a pre-petition claim against the Estate in the amount of $6,417,614.42, as of March 19, 2009, which is secured by a portion of the Assets, including two lots on the Bloody Point Real Property, the Beach Cottages, the Melrose Beach Club, and certain acreage in the Beach Cottages area of the Melrose Property (the "Beach First Collateral").

11. AFG holds a pre-petition claim against the Estate in the principal amount of $4 million, which is secured by a portion of the Assets, including the Melrose Golf Course, the Melrose Inn, the Island House Conference Center, and certain other real property and improvements located on the Melrose Property (the "AFG Collateral").

12. Carolina Shores, LLC ("Carolina Shores") holds a pre-petition claim against the Estate in the amount of $27,750,128.51, secured by a mortgage on a portion of the Assets (such Assets are hereinafter referred as the "Carolina Shores Collateral"). It is believed that Carolina Shores has a junior lien on the majority of its collateral, behind the Senior Post-Petition Loans and the liens securing the pre-petition claims of Beach First and AFG.

13. William R. Dixon, Jr. ("Dixon") asserts a claim in the amount of $34,692,660.58 secured by a mortgage on a substantial portion of the Estate Assets; however, both the Trustee and Carolina Shores have filed adversary proceedings disputing Dixon's claim.[2]

14. Coastal Connections, Inc. and The Greenery (the "Mechanic's Lien Holders") may assert mechanic's liens on a portion of the Estate's Assets. The Trustee estimates these claims to total approximately $372,000.00.

### MCI Asserted Interest in the Melrose Property

15. MCI is a former owner of approximately 300 acres of the Melrose Property, including the Melrose Golf Course, the Melrose Inn, the Island House Conference Center, the Melrose Beach Club, some of the Beach Cottages, certain acreage and other resort amenities, and the Melrose Landing property (the former MCI property is hereinafter collectively referred to as the "Clouded Assets"). MCI asserts certain rights (which include reconveyance rights) in regard to the Clouded Assets.

16. Pursuant to the Court's Order entered January 7, 2010 (as more particularly described hereinbelow, the "January 2010 Sale Order"), the Court held that the Trustee is authorized to sell the assets owned by the Estate to the initial proposed buyer, Montauk Resorts, LLC ("Montauk"), free and clear of MCI's asserted rights and interest in the property pursuant to 11 U.S.C. §§ 363(f)(1) and (4).

17. For the same reasons and upon the same bases stated in the January 2010 Sale Order, the Trustee sought authorization to sell the Estate's Assets by auction, free and clear of MCI's asserted rights and interest pursuant to his <u>Motion and Memorandum for an Order (1) Authorizing the Sale of Substantially All Assets of the Estate at Auction Free and Clear of Liens,</u>

---

[2] The Trustee filed Adversary Proceeding No. 09-80120-jw seeking to avoid the Dixon mortgage as a preference under 11 U.S.C. § 547(b), and Carolina Shores filed Adversary Proceeding No. 09-80134-jw alleging numerous causes of action, including the equitable subordination of Dixon's claim.

6

Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases entered on March 10, 2010 (the "Auction Sale Motion").

18.   On May 7, 2010, the Court entered its Order (1) Authorizing the Sale of Substantially All Assets of the Estate at Auction Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases (the "Auction Sale Order"). The Court has authorized the Trustee to sell the Estate's Assets by auction, free and clean of MCI's asserted rights and interest in the Clouded Assets.

### Post-Petition Financing Previously Obtained by the Trustee

19.   At the time of the Trustee's appointment, the Estate lacked available cash with which to pay expenses necessary or appropriate to protect and properly maintain the Assets. The Estate had only approximately $15,000 of cash in its accounts, which funds were cash collateral of AFG due for payment to AFG pursuant to orders previously entered in the case. The Assets were at risk and would have depreciated without proper maintenance, which includes mowing grass, irrigating areas of the property, fertilizing and performing certain conditioning treatments on the golf courses, maintaining the structures and improvements on the property, and securing the Assets.

20.   As briefly described above under the subsection entitled Existing Liens on the Assets of the Estate, Beach First made a post-petition loan to the Trustee in the amount of $1 million, subject to certain terms and conditions. The Trustee filed a motion for authorization of the post-petition financing and related provisions, and, upon notice and hearing, the Court authorized the post-petition financing. Specifically, on April 24, 2009, the Court entered the Interim Order Approving Postpetition Secured Superpriority Financing, Granting Liens and

7

Providing Superpriority Administrative Expense Status, and on May 8, 2009, the Court entered the Final Order (A) Approving Postpetition Secured Superpriority Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay on a Limited Basis (the "BF Final Order"). The BF Final Order entered on May 8, 2009, includes the provision that the BF Final Order could be supplemented by a supplemental Order increasing authorization for the post-petition financing to a maximum of $1.5 million, i.e., authorizing a loan of an additional $500,000.00.

21. At the time of the authorization of the $1 million of post-petition financing from Beach First, it was understood by the Trustee, Beach First, AFG, the Committee, Carolina Shores, and Dixon that the Trustee probably would need more than $1 million of funding to cover expenses for the expected period of time needed for a sale of the property of the Estate. Hence, the BF Final Order includes the provision allowing for the possibility of $500,000.00 of supplemental financing. The Trustee successfully arranged the additional funding through a loan from Tidelands Bank in the amount of $500,000.00, which was projected to cover necessary and appropriate expenses of the Estate through the target date for a sale of the property of the Estate, on or about the latter part of October, 2009.

22. The Initial Senior Post-Petition Loan from Tidelands Bank was made as a participation loan with the Initial Senior Post-Petition Loan made by Beach First. The Court authorized the Tidelands Bank Initial Senior Post-Petition Loan on an interim basis pursuant to the Interim Order Approving Supplemental Post-Petition Secured Superpriority Financing, Granting Liens and Providing Superpriority Administrative Expense Status entered on July 17, 2009, and the Court authorized the Tidelands Bank Initial Senior Post-Petition Loan on a final basis pursuant to the Final Order (A) Approving Supplemental Post-Petition Secured

8

<u>Superpriorty Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay on a Limited Basis</u> entered on July 29, 2009.

23. In order to fund expenses of the Estate pending the contemplated sale of substantially all assets of the Estate by year end, Tidelands Bank made a second post-petition loan (the "Second TB Post-Petition Loan") in the principal amount of $250,000.00. The Second TB Post-Petition Loan is secured by a second priority lien on all assets of the Estate, junior in priority only to the liens granted to Beach First and Tidelands Bank for the Initial Senior Post-Petition Loans, except for avoidance actions and recoveries from avoidance actions, which shall not be subject to the liens. The Second TB Post-Petition Loan has superpriority status, but its superpriority status is subordinate to the superpriority status granted to the Initial Senior Post-Petition Loans.

24. The Court authorized the Second TB Post-Petition Loan on an interim basis pursuant to the <u>Interim Order (1) Authorizing Second Post-Petition Secured Superpriority Loan from Tidelands Bank Pursuant to 11 U.S.C. §§ 105(a), 364(c)(1), 364(c)(3) and 364(d); (2) Granting a Limited Modification of the Automatic Stay; and (3) Setting Final Hearing Pursuant to Bankruptcy Rule 4001</u> entered on November 23, 2009, and the Court authorized the Second TB Senior Post-Petition Loan on a final basis pursuant to the <u>Final Order (1) Authorizing Second Post-Petition Secured Superpriority Loan from Tidelands Bank Pursuant to 11 U.S.C. §§ 105(a), 364(c)(1), 364(c)(3) and 364(d); and (2) Granting a Limited Modification of the Automatic Stay</u> entered on December 8, 2009.

**Orders for Sale of Substantially All Assets of the Estate**

25. The Trustee made great efforts to sell the Assets prior to November 1, 2009, the maturity date of the Initial Senior Post-Petition Loans, but a sale within that time was not

9

possible. The Trustee negotiated a proposed sale of the property to Montauk, and on September 15, 2009, the Trustee filed his <u>Motion and Memorandum for an Order (1) Authorizing the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Executory Contracts and Leases</u> (the "Sale Motion"). The hearing on the Sale Motion took place on December 30, 2009, and the Court authorized the Trustee to sell the assets of the Estate (which included the Eigelberger Tract at that time), pursuant to the <u>Order (1) Authorizing Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases</u> entered on January 7, 2010 (the "January 2010 Sale Order").

26. The sale to Montauk has not closed to date as originally planned because Montauk's financing has not been completed. As a result, the Trustee filed his Auction Sale Motion as part of a three-prong sale effort by the Trustee. Under the approach, the Trustee is simultaneously proceeding with three separate sale approaches ("sale tracks"), to assure a sale of the Estate Assets by a date certain, and to maximize the value of the Assets. The first sale track is to attempt to close the sale of the Assets already authorized for sale to Montauk under the January 2010 Sale Order. The second sale track is to seek to sell the assets to one or more potential buyers who previously indicated interest in the Assets, under a contract of sale. The third sale track is the scheduling of an auction sale of the assets, to "backstop" the other sale efforts, by providing for a sale by a date certain, in the event that the first two sale tracks are not successful.

27. The Court has authorized the auction sale track pursuant to the Auction Sale Order and the Trustee now seeks permission to obtain financing to fund the upfront costs and expenses required to carry out the auction.

**Additional Post-Petition Financing Arranged by the Trustee**

28. Due to the upfront costs associated with the public auction of the Assets, the Trustee has arranged a new loan from ZC Investments (the "ZC Super-Senior Post-Petition Loan") in the principal amount of $250,000.00, pursuant to the terms outlined in the Loan Commitment (the "Loan Commitment") attached hereto as **Exhibit B**, the terms of which are incorporated herein. The ZC Super-Senior Post-Petition Loan will mature five (5) months from the date of its funding and will bear interest at the rate of fifteen percent (15.00%) per annum, with a default interest rate of twenty-eight percent (28%) per annum. ZC Investments is charging a $45,000.00 origination fee, with $20,000.00 of the origination fee to be paid from the loan proceeds at the time of funding, and the remainder of the origination fee due at maturity of the loan. The ZC Super-Senior Post-Petition Loan will be secured by a first priority lien on all assets of the Estate, except for avoidance actions and recoveries from avoidance actions, which shall not be subject to the liens, and shall be senior in priority to the liens granted to Beach First and Tidelands Bank for the Senior Post-Petition Loans. The terms and provisions of the ZC Super-Senior Post-Petition Loan and its documents shall be, in substance and in all material respects, consistent with the terms stated in the Loan Commitment attached as **Exhibit B**.

**RELIEF REQUESTED**

An immediate and critical need exists for the Trustee to obtain funds in order to fund the up-front costs and expenses of the public auction. Accordingly, the Trustee seeks the entry of an Interim Order to (i) authorize the new post-petition secured priority financing to be provided by ZC Investments, LLC pursuant to §§ 105(a), 364(c)(1), and 364(d) pending a final hearing on the

Motion, (ii) grant a limited modification of the automatic stay, and (iii) set the final hearing on the Motion pursuant to Bankruptcy Rule 4001. Upon the final hearing on the Motion, the Trustee seeks entry of a Final Order on the Motion in substantially the form attached hereto as **Exhibit C** (the "Final Order").

In accordance with Bankruptcy Rule 4001 and SCBLR 4001-4, the essential terms of the ZC Super-Senior Post-Petition Loan by ZC Investments are described below[3].

a. Borrower. Robert C. Onorato, as Trustee for the Chapter 11 bankruptcy estate of Daufuskie Island Properties, LLC

b. Post-Petition Lender. ZC Investments, LLC

c. Amount of ZC Super-Senior Post-Petition Loan. $250,000.00.

d. Interest Rate. 15.00% per annum, with a default rate of 28.00% per annum

e. Loan Origination Fee. $45,000.00 total, of which $20,000.00 shall be paid at the loan closing, and the remainder ($25,000.00) shall be paid at the loan maturity and/or upon the sale of the property.

f. Lender's Attorney's Fees. At the loan closing, $25,000.00 shall be reserved for application in payment of the attorney's fees and expenses incurred by ZC Investments in connection with this loan.

g. Closing Date. Upon entry of the Interim Order (defined herein) and all conditions precedent to the loan have been met.

h. Term. The loan shall terminate on the earliest of (such ending date, the "Termination Date"): (a) five (5) months from the date of funding of such loan, (b) the sale of substantially all of the Assets, (c) the conversion or dismissal of the

---

[3] To the extent anything in this Motion is inconsistent with the proposed Interim Order, the proposed Interim Order shall control.

Debtor's bankruptcy case; (d) an event of default under the ZC Super-Senior Post-Petition Loan.

i. <u>Budget</u>. The Trustee's borrowings, disbursements and expenditures under the ZC Super-Senior Post-Petition Loan shall be limited, subject to certain variances, as set forth in a budget (the "<u>Budget</u>") prepared by the Trustee and approved by ZC Investments, Tidelands Bank, Beach First, Carolina Shores, and the Committee, or as authorized by Order of the Court. A copy of the proposed Budget is attached hereto as **Exhibit D**. The Budget shall not be materially modified unless the modification is made with the consents of ZC Investments, Tidelands Bank, Beach First, Carolina Shores and the Committee, or by Order of the Court.

j. <u>Use of Financing</u>. The loan shall be used solely for (i) the upfront costs and expenses of the auction to the extent set forth in the Budget, subject to certain variances, and (ii) certain fees and expenses of ZC Investments, as set forth in the Loan Commitment.

k. <u>Collateral</u>. Subject to permitted encumbrances approved by ZC Investments in its sole discretion, the indebtedness to ZC Investments for the ZC Super-Senior Post-Petition Loan and all interest, fees and expenses related thereto (a) will be entitled to superpriority claim status pursuant to §364(c)(1), and (b) will be secured by (i) a perfected security interest (the "<u>ZC Super-Senior Post-Petition Loan Lien</u>") pursuant to § 364(d) (the liens securing the ZC Super-Senior Post-Petition Loan shall be senior to the Senior Post-Petition Loan liens and all liens securing any prepetition debt) in all of the Assets of the Estate, including all real and personal property, whether now existing or hereafter arising (the "<u>ZC Super-Senior Post-Petition Loan Collateral</u>")

13

subject to the Interim Order and the Final Order; provided, however, that notwithstanding the foregoing language, the ZC Super-Senior Post-Petition Loan Lien shall not include avoidance actions and recoveries from avoidance actions. In addition, subject to the rights of Beach First and Tidelands Bank under the Senior Post-Petition Loans, ZC Investments will have the right to utilize, at no cost or expense, any tradenames, trademarks, copyrights or other intellectual property to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the ZC Super-Senior Post-Petition Loan Collateral. The ZC Super-Senior Post-Petition Loan Liens shall be senior priority liens to all other liens or security interests including the Senior Post-Petition Loan liens.

> The term "ZC Super-Senior Post-Petition Loan Collateral" shall include, subject to the entry of a Final Order upon this Motion, the Trustee's rights under §506(c) and the proceeds thereof.

l. **Default Rights**. Upon default under the ZC Super-Senior Post-Petition Loan, or the Termination Date, or as otherwise provided in the ZC Super-Senior Post-Petition Loan documents, ZC Investments may foreclose on any of the Assets to recover the ZC Super-Senior Post-Petition Loan. Prior to proceeding with a foreclosure action or any other state law remedies, ZC Investments acknowledges that it must file and serve on all interested parties a motion for relief from stay pursuant to §362(d).

The Trustee requests entry of the proposed Interim Order and for authority to borrow funds from ZC Investments as requested herein. The Trustee requests that, as part of the relief granted, the Court order that the stay under Bankruptcy Rule 6004(g) is not applicable to the provisions of the Interim Order.

Thereafter, upon notice to parties entitled to notice, the Trustee requests that the Court conduct the final hearing on the Motion pursuant to Bankruptcy Rule 4001, and enter a final order in substantially the form of **Exhibit C** with only such conforming changes as reflecting the entry and provisions of the Interim Order and the applicable portions of the Budget (the "Final Order").

### BASIS FOR RELIEF REQUESTED

Bankruptcy Code §364 provides, in pertinent part, as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> * * * * * *
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. §§ 364(c) and (d).

As discussed above, the Trustee previously was unable to obtain credit needed to fund payment of expenses necessary or appropriate to protect and preserve the assets of the Estate, and to market them for sale, on an unsecured priority basis; hence, the Senior Post-Petition Loans. In the same way, the Trustee has been unable to obtain additional funding needed to pay the upfront costs and expenses to cover the public auction of the Assets, solely on an unsecured priority basis. A new loan in the amount of $250,000.00 is unavailable to the Trustee without granting superpriority status under § 364(c)(1) and liens pursuant to § 364(d). Therefore, the

15

granting of liens under § 364(d) to secure the ZC Super-Senior Post-Petition Loan is necessary and appropriate in this case.

As a provision for the ZC Super-Senior Post-Petition Loan, the Senior Post-Petition Loan Lenders and the prepetition secured lenders are entitled pursuant to §361 to adequate protection of their interests in the property securing the ZC Super-Senior Post-Petition Loan. In this case, the Senior Post-Petition Loan Lenders and the pre-petition secured lenders are adequately protected against any diminution in value in their respective interests in the Assets resulting from the imposition of the ZC Super-Senior Post-Petition Loan Lien by the use of the loan proceeds to enable a sale of such Assets by auction. The proposed Interim Order, if approved, will provide the prepetition secured lenders and the Senior Post-Petition Loan Lenders with adequate protection while allowing the Trustee an opportunity to proceed with the public auction of the Assets.

The ZC Super-Senior Post-Petition Loan has been negotiated in good faith and at arm's length between the Trustee, on the one hand, and ZC Investments, on the other hand, and the Trustee and ZC Investments have each been represented by separate counsel in this matter.[4] Any loan extended and other financial accommodations made to the Trustee by ZC Investments will be extended by ZC Investments in good faith, as that term is used in § 364(e). Thus, ZC Investments is entitled to protection as a good faith lender under § 364(e).

The relief requested herein contemplates a limited modification of the automatic stay (to the extent applicable) only to the extent to permit the Trustee to (i) grant the security interests, liens, and priority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) permit ZC Investments to file

---

[4] It has been disclosed to the Trustee that Bernie M. Tuggle is the manager and owner of ZC Investments and is also a co-manager and a member of Carolina Shores, a pre-petition creditor of the Debtor.

all documents necessary to provide notice of the ZC Super-Senior Post-Petition Loan Lien; and (iii) implement the terms of the proposed Orders. Notwithstanding the limited modifications set forth herein, the automatic stay otherwise remains in full force and effect. ZC Investments shall file a motion for relief from the stay in the event it seeks to enforce its secured rights upon a default under the terms of the ZC Super-Senior Post-Petition Loan.

Stay modifications of this kind are ordinary and standard features of post-petition financing facilities and, in the Trustee's business judgment, are reasonable and fair under the present circumstances.

WHEREFORE, the Trustee respectfully requests that the Court enter an interim order, in substantially the form attached hereto as **Exhibit A**, to (i) authorize postpetition secured superpriority financing pursuant to Bankruptcy Code §§ 105(a), 364(c)(1), and 364(d), (ii) grant a limited modification of the automatic stay, (iii) set the final hearing on the Motion pursuant to Bankruptcy Rule 4001, (iv) upon the final hearing on the Motion, enter a final order on the Motion in substantially the form attached hereto as **Exhibit C** and (v) grant such other and further relief as may be appropriate.

        /s/ Julio E. Mendoza, Jr.
        Julio E. Mendoza, Jr. (Fed ID No. 3365)
        Laurie A. Becker (Fed. ID No. 10141)
        NEXSEN PRUET, LLC
        1230 Main Street, Suite 700 (29201)
        Post Office Drawer 2426
        Columbia, South Carolina 29202
        803-540-2026
        803-727-1478
        rmendoza@nexsenpruet.com

        Attorneys for Robert C. Onorato, Trustee for the Chapter 11 Estate of Daufuskie Island Properties, LLC, a/k/a Daufuskie Island Resort & Breathe Spa

June 30, 2010
Columbia, South Carolina

18

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Daufuskie Island Properties, LLC a/k/a<br>Daufuskie Island Resort & Breathe Spa,<br><br>Debtor. | Case No. 09-00389-jw<br><br>Chapter 11 |

## CERTIFICATE OF SERVICE

I, Jane E. Brown, an employee of Nexsen Pruet, LLC, do hereby certify that copies of the MOTION AND MEMORANDUM OF THE TRUSTEE FOR INTERIM AND FINAL ORDERS TO (I) AUTHORIZE A POST-PETITION SECURED AND SUPERPRIORITY LOAN FROM ZC INVESTMENTS, LLC PURSUANT TO BANKRUPTCY CODE §§105(a), 364(c)(1), AND 364(d), (II) GRANT A LIMITED MODIFICATION OF THE AUTOMATIC STAY, AND (III) SET FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 were served upon the creditors and parties in interest shown on the mailing list attached hereto as Exhibit A by placing copies of the same in the U.S. Mail Service, first class postage paid on June 30, 2010, at Columbia, South Carolina.

/s/ Jane E. Brown
Jane E. Brown
Assistant to Julio E. Mendoza, Jr. (I.D. No. 3365) and
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC 29202
Telephone: 803-771-8900

Attorneys for Robert C. Onorato, the Chapter 11
Trustee for the Estate of Daufuskie Island Properties,
LLC, a/k/a Daufuskie Island Resort & Breathe Spa

19