UNITED STATES BANKRUPTCY COURT

DISTRICT OF SOUTH CAROLINA

Case Number:  **09-00389-jw**
Adversary Proceeding Number:  **09-80094-jw**

**ORDER**

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby **ORDERED.**

**FILED BY THE COURT**
**09/08/2010**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 09/09/2010

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>DAUFUSKIE ISLAND PROPERTIES, LLC,<br><br>                    Debtor. | Bankruptcy Case Number<br>09-00389-jw<br>Chapter 11 |
| The Melrose Club, Inc.<br>                    Plaintiff,<br>v.<br><br>Robert C. Onorato, in his capacity as Chapter 11 Trustee for the Estate of Daufuskie Island Properties, LLC; Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989;William R. Dixon, Jr. and Gayle Bulls Dixon; AFG, LLC; Carolina Shores, LLC; Beach First National Bancshares, Inc. d/b/a Beach First National Bank; Beach Cottages II, LLC; Pensco Trust Company, Inc.; The Beach Cottages, LLC; The Greenery, Inc.; Coastal Connections, Inc.; Beach Cottages III, LLC; Easter Beach Villas, LLC; and Ocean Front Villas, LLC,<br><br>                    Defendants. | Adversary Proceeding Number<br>09-80094-jw<br><br><br><br>**ORDER DENYING MCI'S<br>MOTION TO VACATE** |
| The Melrose Club, Inc.,<br>                    Plaintiff,<br>v.<br><br>DAUFUSKIE ISLAND PROPERTIES, LLC; William R. Dixon, Jr.; Gayle Bulls Dixon; Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989,<br><br>                    Defendants,<br><br>of whom Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989, is<br><br>                    Third Party Plaintiff,<br>v.<br><br>William R. Dixon, Jr.,<br>                    Third Party Defendant. | |

1

This matter comes before the Court upon the Motion to Vacate the Order and Judgment entered on June 1, 2010 ("June 1st Order") and the Motion to Vacate the Order and Judgment entered on June 30, 2010 ("June 30th Order"), filed by The Melrose Club, Inc. ("MCI") (collectively "Motions to Vacate"). Objections and responses to the Motion to Vacate were filed by William R. Dixon, Jr. and Gayle Bulls Dixon; Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989 ("CFT"); Robert C. Onorato, in his capacity as Chapter 11 Trustee for the Estate of Daufuskie Island Properties, LLC; AFG, LLC; Carolina Shores, LLC; Beach First National Bancshares, Inc. d/b/a Beach First National Bank n/k/a BNC Bank; Beach Cottages II, LLC ("Beach II"); Pensco Trust Company, Inc.; and Beach Cottages III, LLC ("Beach III") (collectively the "Defendants").

Both the June 1st Order and June 30th Order (collectively "June Orders") arose in this adversary proceeding, a Declaratory Judgment Action initiated by MCI, to have the Court determine the respective rights of various parties in relation to real property located on Daufuskie Island, South Carolina, some owned by Debtor and some owned by other entities. In the June 1st Order, the Court examined certain asserted counterclaims against MCI based solely on state law, including contract law, and primarily reviewed events which occurred pre-petition. The Court granted summary judgment to MCI as to the counterclaims of intentional interference with contract and slander of title and denied summary judgment as to the counterclaims of civil conspiracy and abuse of process. The latter counterclaims are pending for trial.

In the June 30th Order, the Court considered and granted the Defendants' multiple motions for summary judgment. The June 30th Order specifically stated that it was based on a more complete examination of the facts presented by the parties after the completion of discovery. The Court found that (1) the reconveyance right had not been triggered because the

2

Debtor had made no election under Article 5 of the Transfer Agreement, (2) the Article 5 covenant should be nullified based on a change of conditions and public policy considerations, (3) MCI's asserted interest was not superior to the interests of those Defendants asserting liens on bankruptcy assets or non-bankruptcy assets, and (4) the Debtor's transfers of property to CFT, Beach II and Beach III were valid under Section 14.1.6 of the Transfer Agreement, and thus, MCI's asserted interest is not superior to the interests of CFT, Beach II, Beach III, or any Defendant asserting a lien on the property owned by those entities.  The Court also found that the property currently owned by CFT, Beach II, and Beach III are non-estate assets, which were not intended to be, nor are subject to, the Article 5 covenant and asserted reconveyance right.  The Court denied summary judgment as to the claim that the Article 5 covenant was unenforceable because it lacked independent consideration.

In both the June Orders, the Court made Findings of Fact and Conclusions of Law based upon the record and argument presented at each respective hearing. In fact, throughout the adversary proceeding and the main Chapter 11 case, the Court has made independent findings and has not incorporated by reference its findings from previous orders.  MCI actively participated in the hearings on the motions addressed by the June 1st and June 30th Orders, even on occasion as the moving party.

### A. <u>Applicable Law</u>

Rule 59 (e) of the Federal Rules of Civil Procedure, applicable in the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9024 allows the court to vacate a judgment to correct a clear error of law. <u>In re Sa'ad El-Amin</u>, 252 B.R. 652, 654 (Bankr. E.D.Va 2000). Rule 60 (b)(4) of the Federal Rules of Civil Procedure, made applicable through Federal Rule of Bankruptcy Procedure 9024, allows a court to vacate an order where the judgment is void.  Rule 60(b)(6)

provides: "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief." Id. The grounds for such relief are narrow:  "[A] judgment…is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" Schwartz v. United States, 976 F.2d 213, 217 (4th Cir. 1992) (quoting 11 Wright & Miller, Fed. Practice and Procedure § 2862 at 198-200 (1973).

### B. MCI's Motions to Vacate

In the Motions to Vacate, MCI asserts that the Court lacked jurisdiction to enter the June Orders as a consequence of MCI filing identical Notices of Appeal on May 17, 2010 in this consolidated adversary proceeding and the main Chapter 11 case.

MCI asserts that it has appealed separately from five orders of this Court. In its Notices of Appeal, MCI states that it is appealing the following orders in the consolidated adversary proceeding:

(1) Order Granting Partial Summary Judgment to Carolina Shores, LLC and The Melrose Club, Inc. and Denying the Motions for Summary Judgment as to the Remaining Claims of MCI, Carolina Shores, AFG, LLC and Beach First National Bancshares, Inc. (Adv. Pro. No. 09-80094, Entered on December 21, 2009, Adv. Pro. Docket No. 143). ("December 21st Order")

(2) Order Denying Motion to Alter or Amend the Order and Judgment entered December 21, 2009 filed by The Melrose Club, Inc. (Adv. Pro. No. 09-80094, Entered on April 2, 2010, Adv. Pro. Docket No. 187). ("April 2nd Order")

The December 21st Order found that MCI's reconveyance right under Section 5.1 of the Transfer Agreement was a covenant running with the land but that MCI's reconveyance right had not been triggered at that time because the Debtor had not made an election under Section 5.1 of the Transfer Agreement. The December 21st Order was based upon the Court's interpretation of

4

the Transfer Agreement under state and contract law in order to define the parties' rights in this Declaratory Judgment Action.

The Notices of Appeal further indicate that MCI appeals from the following orders entered in the main Chapter 11 case:

(1) Order (1) Authorizing Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases (Case No. 09-00389-jw, Entered on January 7, 2010, Docket No. 630) ("the Montauk Sale Order")

(2) Order Denying Motion to Vacate or in the Alternative, to Alter or Amend the Order (1) Authorizing the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases (Case No. 09-00389-jw, Entered on May 3, 2010, Docket No. 767) ("the Montauck Order Denying Motion to Vacate")

(3) Order (1) Authorizing Sale of Substantially All Assets of the Estate at Auction Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (2) Approving the Assumption and Assignment of Certain Unexpired Executory Contracts and Leases (Case No. 09-00389-jw, Entered on May 7, 2010, Docket No. 772) ("the Auction Order")

(collectively "the Sale and Auction Orders"). The Sale and the Auction Orders found that the Debtor's Assets could be sold pursuant to bankruptcy law 11 U.S.C. § 363(b) and that such transfer would be free and clear of alleged liens and interests, including MCI's alleged interest, either with the consent of interest holders, under 11 U.S.C. § 363(f)(1) based on the changed circumstances doctrine, or under 11 U.S.C. § 363(f)(4) because there was a bona fide dispute regarding the interest.[1] The Sale and the Auction Orders were based upon motions brought before the Court by the Chapter 11 Trustee for the benefit of all creditors and parties to the bankruptcy case and applied standards set forth in specific sections of the Bankruptcy Code.[2]

---

[1] Upon any sale under § 363(f), only liens or interests would transfer to the proceeds of the sale.
[2] The Court notes that CFT, Beach II, and Beach III are owners of non-estate assets, and therefore, were not parties to the Sale and Auction Orders.

5

### C. Analysis

MCI argues that the June Orders are void because the Court lacked jurisdiction to enter those Orders. After reviewing the December 21st Order, the April 2nd Order, the Auction and Sale Orders, the Notices of Appeal, the Motions to Vacate and objections, and considering the arguments made at the hearing, the Court finds that the Notices of Appeal filed by MCI did not divest the Court of jurisdiction to enter the June Orders and denies MCI's Motions to Vacate.

The Court recognizes that the filing of a timely and sufficient notice of appeal of a final order generally divests the lower court of jurisdiction and control over the matters on appeal. Grand Jury Proceedings Under Seal v. United States, 947 F.2d 1188, 1190 (4th Cir. 1991), see also In re Taylor, 198 B.R. 142, 154 (Bankr.D.S.C. 1996). An appeal, however, does not divest the lower court of jurisdiction in three discrete circumstances: (1) over issues not involved in the appeal; (2) when the order appealed from is not appealable; or (3) when the court's action will aid in the appeal. Bryant v. Bryant, 175 B.R. 9, 11-12 (W.D. Va. 1994); see also In re Taylor 198 B.R. at 154. Applying these principles, the Court concludes that, despite the filing of the Notices of Appeal, it retained jurisdiction over this proceeding and thus, the June Orders were properly entered.

### 1. The Orders Appealed from are Not Appealable

#### a. Finality of Orders

Initially, the Court considers the validity, timeliness, and nature of MCI's Notices of Appeal. It is well settled that only final orders are appealable as a matter of right. In re RPC Corp., 114 B.R. 116, 118 (M.D.N.C. 1990); see also 28 U.S.C. § 158 (a). Final orders are those that resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights of the parties. In re Looney, 823 F.2d 788, 790 (4th Cir. 1987); see also Dilly v. S.S.

Kresge, 606 F.2d 62 (4th Cir. 1979) ("a final decision generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment").

The December 21st Order is not a final appealable order from which MCI could appeal. The December 21st Order granted partial summary judgment on certain, discrete issues but expressly left several matters undetermined, including the validity, priority and enforceability of the Article 5 covenant and the Defendants' various affirmative defenses.[3]  See Kountaki v. Johnson, 2007 WL 4570161, at *2 (S.D. Tex. Dec. 26, 2007) (a bankruptcy court's order is not final if it leaves unresolved questions); see also City of New York v. Exxon Corp., 932 F.2d 1020, 1023 (2d Cir. 1991) (orders that leave affirmative defenses undecided are not final). Additionally, the December 21st Order left unresolved certain of MCI's requests, including, for example, MCI's request for a declaration that particular property transfers were invalid or voidable because they were in violation of the Transfer Agreement.  See Dilly, 606 F.2d at 62 (an order granting partial summary judgment is not a final appealable order); see also DiMeglio v. Haines, 45 F.3d 790, 807 (4th Cir. 1995) (holding a denial of summary judgment is not treated as final).

MCI moved to alter or amend the interlocutory December 21st Order and this Court denied MCI's motion on April 2, 2010.  The Court also finds that the April 2nd Order is not a final appealable order.  An order on a motion to reconsider an interlocutory order does not convert an otherwise nonappealable order into an appealable one.  See In re Urban Broadcasting Corp., 401 F.3d 236, 246 (4th Cir. 2005) (affirming the district court's ruling that both an order denying a motion to extend a claim objection deadline and an order denying a motion to reconsider that order were interlocutory in nature and thus not appealable); see also Litvinuk v.

---

[3] The December 21st Order found that the reconveyance right had not been triggered under the terms of the Transfer Agreement at the time the order was entered, whereas the June 30th Order nullified the covenant applying state law.

7

Litvinuk, 27 Cal.2d 38, 43-44 (1945) ("[I]t is the general rule that an appeal may not be taken from a nonappealable order by the device of moving to vacate and appealing from a ruling denying the motion.").

Since the December 21st and April 2nd Orders are interlocutory, the Court considers them in light of Rule 54(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054. Rule 54(b) states, in pertinent part:

> When more than one claim for relief is presented . . . , or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon express determination that there is no just reason for delay and upon express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

This Court has not, nor has MCI requested that either the December 21st Order or the April 2nd Order be certified as final. Furthermore, MCI's Notices of Appeal cannot be treated as a request for leave to appeal under Rule 8003(c) because MCI did not file a timely notice of appeal as to these claims. The Order Denying the Motion to Alter or Amend the December 21st Order was entered on April 2, 2010. MCI did not file a notice of appeal until May 17, 2010.[4] Therefore, MCI's notice of appeal cannot be considered timely for purposes of a request for leave to appeal.

The authority cited by MCI for the proposition that an interlocutory order can be converted into a properly appealable order does not support such a result in this case. Of the cases cited by MCI, the only one that the Court need address is the case of In re Urban

---

[4] Even assuming the Order Denying the Motion to Alter or Amend the Order entered December 21, 2009 is a final, appealable order, MCI did not file a notice of appeal within the fourteen day limit prescribed by Rule 8002(a).

8

Broadcasting Corp., 401 F.3d 236 (4th Cir. 2005). In Urban Broadcasting, the Fourth Circuit Court of Appeals rejected an attempted appeal of interlocutory orders under the "collateral order" doctrine. In doing so, the Fourth Circuit set out the requirements for the application of the doctrine, stating:

> Under the collateral order doctrine, interlocutory orders of the bankruptcy court are appealable if they conclusively determine [a] disputed question, resolve an important issue completely separate from the merits of [an] action, and [are] effectively unreviewable on appeal from a final judgment.

Id. (internal quotations omitted).

In this case, the issues decided in the December 21st and April 2nd Orders are a part of and not completely separate from the merits of the declaratory judgment proceeding nor are they effectively unreviewable on appeal from a final judgment in the adversary proceeding. Similar to the order in the Urban Broadcasting case, the interlocutory December 21st and April 2nd Orders are not properly appealable.

### b. The December 21st Order is Distinct from the Sale and Auction Orders.

MCI attempts to circumvent the interlocutory nature of the December 21st Order by claiming that the rulings are so intertwined with the Sale and Auction Orders that they cannot be separated. The Court agrees with the objecting parties that MCI cannot "bootstrap" an untimely appeal of the December 21st Order with the appeals of the Sale and Auction Orders, orders based upon a specific application of § 363 of the Bankruptcy Code. The primary issues considered in the Sale and Auction Orders are different from that of the December 21st Order. The Sale and Auction Orders were not dependent upon the December 21st Order's determination that the Article 5 covenant had not been triggered and do not address the effect of Section 14.1.6 of the Transfer Agreement. Even if the Sale and Auction Orders were overturned, the rulings in the December 21st Order would still stand. Additionally, the Sale and Auction Orders are silent with

respect to the non-estate assets so it would be illogical and unfair to allow MCI to bootstrap the appeals as to the Defendants with interests in non-estate assets.

Furthermore, the Court finds that subsequent events have rendered MCI's appeal of the Sale and Auction Orders moot, thereby precluding MCI's reliance on these orders for the appeal of the December 21st and April 2nd Orders. Initially, it appears that reversal of the Montauk Sale Order is unnecessary because the Trustee has advised that the Asset Purchase Agreement with Montauk Resorts, LLC ("Montauk") had been terminated. Even if the Agreement were to be reinstated, reversal of the Montauk Sale Order based upon MCI's appeal would be inappropriate because of a settlement agreement reached between MCI, the Trustee, and Montauk, which the Court has approved, which allowed the sale. In that agreement, MCI agreed to release all of its claims against the estate property, including a dismissal of all appeals and motions to alter or amend, upon the payment of one million dollars from the proceeds of the sale. A reversal of the Montauck Sale Order at MCI's request may be a breach of that settlement agreement. Since a reversal of the Montauk Sale Order and the Montauck Order Denying Motion to Vacate cannot afford MCI relief, MCI's appeal should be considered moot and MCI's attempt to link the untimely appeal of the December 21st and April 2nd Orders to the appeal of these orders be precluded.

The Court also finds that the Auction Order does not save MCI's otherwise untimely and improper appeal of the December 21st and April 2nd Orders. In opposing the auction sale motion that ultimately resulted in the Auction Order, MCI's initial response incorporated its earlier, original objection to the Montauk Sale Order. However, at the sale hearing MCI acknowledged the application of § 363(f)(4) as grounds for permitting the sale. When the Court requested proposed orders from the parties, MCI submitted a proposed order which actually provided for

10

authorization of the sale under the bona fide dispute provisions of 11 U.S.C. § 363(f)(4). Furthermore, MCI appears to recognize that opposition to the sale of Debtor's property only invites continuing deterioration of the assets to the detriment of all creditors and parties in interest. This is consistent with MCI's repeated statements that it will not seek a stay pending appeal that would prevent a sale of the Debtor's property. Since the application of § 363(f)(4) alone is sufficient grounds for authorization of the Auction Order, the appeal or reversal will afford MCI no relief, and for this additional reason, MCI should not be allowed to rely on the Auction Order to assert an appeal of the December 21st and April 2nd Orders.

The Court, therefore, concludes that the December 21st and April 2nd Orders are interlocutory and no timely notice of appeal or request for leave of appeal has been filed that would divest the Court of jurisdiction. The Sale and Auction Orders are not intertwined with the December 21st and April 2nd Orders because different issues were decided and all of the orders entered were based on independent Findings of Fact and Conclusions of Law. Further, MCI's appeal of the Sale and Auction Orders has been rendered moot by subsequent events. Thus, the June Orders were properly entered.

### 2. The Court Retains Jurisdiction over Those Issues Not Raised on Appeal

Notwithstanding the untimeliness of MCI's appeal, the Court also concludes that it retained jurisdiction over this proceeding because the issues on appeal are not affected by the matters addressed in the June Orders. See In re Taylor, 198 B.R. at 154 ("A pending appeal of a bankruptcy decision does not deprive the bankruptcy court of jurisdiction over issues not involved in the appeal.").

### a. June 1st Order

The June 1st Order partially granted MCI's motion for summary judgment on certain counterclaims against it. The Court refused to grant summary judgment on the abuse of process and civil conspiracy counterclaims because the counterclaimants demonstrated that genuine issues of fact exist based upon various actions taken by MCI's board.[5] These counterclaims are not centered upon the December 21st and April 2nd Orders adjudicating MCI's rights pursuant to the 1996 Transfer Agreement. Additionally, the Court has continually made independent findings after hearings in which MCI fully participated with respect to the rights of MCI and the rights of Counterclaimants. Therefore, the Court concludes that MCI's appeal of the December 21st Order is not affected by the issues raised in MCI's motion for summary judgment, and thus, the Court retained jurisdiction to enter the June 1st Order.

### b. June 30th Order

The issues on appeal with respect to the December 21st and April 2nd Orders do not encompass the issues raised in the Defendants' motions for summary judgment so as to have precluded the Court from entering the June 30th Order. As detailed earlier, the December 21st and April 2nd Orders did not adjudicate the issues of the validity and enforcement of the Article 5 covenant, whereas, the June 30th Order addresses those issues directly. Thus, even if the December 21st and April 2nd Orders were reversed, the Court's finding with respect to the validity and enforceability of the Article 5 covenant (i.e. the annulment based on changed circumstances) would not be affected. See In re Taylor, 198 B.R. at 154 (finding that the

---

[5] In the June 1st Order, the Court granted summary judgment in favor of MCI on the intentional interference with contract counterclaim because the counterclaimants did not adequately demonstrate that any alleged interference by MCI with Debtor's property sales to third parties directly resulted in damages to them. The Court relied on state law, not the December 21st Order, in determining that the elements of intentional interference with contract were simply not met. The Court also ruled in favor of MCI on the slander of title counterclaim because the counterclaimants abandoned this claim.

bankruptcy court retained jurisdiction to rule on the defendant's motion for summary judgment where the order on appeal did not adjudicate the issues of the validity and enforceability).

Turning to the Sale and Auction Orders, MCI argued that the finding of changed circumstances in the June 30th Order is related to and dependent on the issues involved in the appeal of the Sale and Auction Orders. As properly noted by the Defendants, the problem with this argument is that it discounts the manner in which the Court addressed the issue of annulment in each of its orders. While the Court has ruled consistently on the issue of annulment based on changed circumstances, the Court considered the issue on a de novo basis each time and under the proper standard and applicable law relative to the type of proceeding before it.[6] When considering the changed circumstances defense in connection with the June 30th Order, the Court declined to give preclusive effect to its ruling on changed circumstances in the Auction and Sale Orders.

The rationale for the Court's actions rest in the different procedural contexts in which the decisions were made. The issue decided with respect to the Sale and Auction Orders was whether the Trustee had presented facts sufficient to meet his burden of proof that applicable bankruptcy law permitted the sale free and clear of MCI's interest. The Court applied the Bankruptcy Code in ruling on the Sale and Auction Orders. In deciding the parties' relative rights in the June 30th Order, the Court applied state law in determining, among others, the issue of whether the undisputed facts then before the Court established as a matter of law that the Article 5 covenant should be annulled due to a change of circumstances. The issue of whether the Trustee met his burden of proof in connection with the Sale and Auction Orders is different from whether the Defendants met the standard required for summary judgment in connection

---

[6] On each occasion after the Court first addressed the issue relating to changed circumstances, MCI argued that the prior rulings should not be accorded res judicata, collateral estoppel or law of the case status, and the Court, in fact, considered the issue on its merits each time.

13

with their motions in this consolidated adversary proceeding.  The Court further notes that the Sale and Auction Orders do not address any matters related to the non-estate assets, whereas, the June 30th Order made certain findings with respect to those specific properties.

The Court, therefore, concludes that the issues on appeal regarding the December 21st and April 2nd Orders in this adversary proceeding and the Sale and Auction Orders in the main Chapter 11 case are not affected by the Defendants' motions for summary judgment, and thus, the Court was well within its jurisdiction to enter the June 30th Order.

### 3. Aid in the Appeal

Finally, this Court's June 30th Order would serve to aid in any appeal by further clarifying and supplementing the factual context for the determination of changed circumstances. This is especially true given the timing of the Court's consideration of the various motions in the Chapter 11 case and in this consolidated adversary proceeding.  The hearing on the motions for summary judgment was held shortly before the entry of the Auction Order.  The June 30th Order was entered after completion of an extended discovery period to fully develop the facts of the case.  The June 30th Order is a complete presentation of the effect of the Transfer Agreement on the Chapter 11 case, whereas, sale motions, such as the Auction Order, by their very nature are intended to be a summary process under bankruptcy law.  See e.g., In re Collins, 180 B.R. 447, 452 (Bankr.E.D.Va 1995) (finding a bona fide dispute exists under § 363(f) does not require the court to resolve the underlying dispute); In re NJ Affordable Homes Corp., 2006 WL 2128624, *10 (Bankr.D.N.J. 2006) (determining whether a bona fide dispute exists does not require the determination of the probable outcome prior to authorizing a sale under § 363(f)(4)).

To the extent that the June 30th Order addresses the same issues addressed by Auction Order, the situation in this case is analogous to that presented in In re Grand Jury Proceedings

14

Under Seal v. United States, 947 F.2d 1188 (4th Cir. 1991). In that case, the Fourth Circuit Court of Appeals held that the trial court had jurisdiction to conduct additional proceedings in the case after the filing of notices of appeal with respect to two earlier orders in that the subsequent proceedings addressed specific issues directly in aid of the appeal. In the present case, even if the June 30th Order can be said to address issues subject to the MCI appeals, the Order was entered before the docketing of the appeal in the District Court and specifically addresses issues which would aid in consideration of the appeal.

Based on the foregoing analysis, the Motion to Vacate is denied.

**AND IT IS SO ORDERED.**

Charleston, South Carolina

September 8, 2010